STATE of Arkansas *v.* Eugene HULUM

CR 01-1271 78 S.W.3d 111

Supreme Court of Arkansas
Opinion delivered June 20, 2002

*Mark Pryor*, Att'y Gen., by: *David R. Raupp*, Sr. Ass't Att'y Gen., and *Vada Berger*, Ass't Att'y Gen., for appellant.

*James Law Firm*, by: *William O. James* and *Clay T. Buchanan*, for appellee.

RAY THORNTON, Justice. This is a State's appeal from the conviction of appellee, Eugene Hulum, of manslaughter for the death of his nineteen-month-old son, Marquis Hulum. Appellee does not appeal from that conviction. The State acknowledges that the jury's manslaughter verdict operates as an acquittal for double-jeopardy purposes on the charges of capital murder and first-degree murder on which the jury was also instructed, making retrial of appellee on those charges impermissible. *See e.g., Price v. Georgia*, 398 U.S. 323, 329 (1970). Based on these double-jeopardy principles, the State does not request that we reverse or remand this case, but merely requests that we declare error on two points.

Before reaching the merits of the State's appeal, we must consider whether this matter is properly before this court. Rule 3 of the Appellate Rules of Procedure—Criminal allows the State to pursue a criminal appeal in certain cases. The rule provides:

> If the attorney general, on inspecting the trial record, is satisfied that error has been committed to the prejudice of the state, and that the correct and uniform administration of the criminal law

requires review by the Supreme Court, he may take the appeal by filing the transcript of the trial record with the clerk of the Supreme Court within sixty (60) days after the filing of the notice of appeal.

Ark. R. App. P.—Crim. 3(c).

 In *State v. Ashley*, 347 Ark. 523, 66 S.W.3d 563 (2002), we outlined the requirements for a State's appeal. We explained:

> In criminal cases, we accept appeals by the State in limited circumstances. *State v. McCormack*, 343 Ark. 285, 34 S.W.3d 735 (2000). This court has held our review of a State appeal is not limited to cases that would establish precedent. *State v. Gray*, 330 Ark. 364, 955 S.W.2d 502 (1997). Moreover, there is a significant and inherent difference between appeals brought by criminal defendants and those brought on behalf of the State. The former is a matter of right, whereas the latter is not derived from the Constitution, nor is it a matter of right, but is granted pursuant to Rule 3. *State v. Guthrie*, 341 Ark. 624, 19 S.W. 3d 10 (2000); *State v. McCormack*; *supra*. We accept appeals by the State when our holding would be important to the correct and uniform administration of the criminal law. Rule 3(c). As a matter of practice, this court has only taken appeals which are narrow in scope and involve the interpretation of law. *State v. Banks*, 322 Ark. 344, 909 S.W.2d 634 (1995). Where an appeal does not present an issue of interpretation of the criminal rules with widespread ramifications, this court has held that such an appeal does not involve the correct and uniform administration of the law. *State v. Harris*, 315 Ark. 595, 868 S.W.2d 488 (1994).
>
> Appeals are not allowed merely to demonstrate the fact that the trial court erred. *State v. Stephenson*, 330 Ark. 594, 955 S.W.2d 518 (1997); *State v. Spear and Boyce*, 123 Ark. 449, 185 S.W. 788 (1916). Thus, where the resolution of the issue on appeal turns on the facts unique to the case, the appeal is not one requiring interpretation of our criminal rules with widespread ramification, and the matter is not appealable by the State. *State v. Guthrie*, *supra*; *State v. Howard*, 341 Ark. 640, 19 S.W.3d 4 (2000); *State v. Gray*, 330 Ark. 364, 955 S.W.2d 502 (1997); *State v. Edwards*, 310 Ark. 516, 838 S.W.2d 356 (1992) ("Here, the State questions the trial court's application of our rule to the facts

at hand and not its interpretation, so the appeal must be dismissed."). This court will not even accept mixed questions of law and fact on appeal by the State. *State v. Gray, supra; State v. Edwards, supra; State v. Hart*, 329 Ark. 582, 952 S.W.2d 138 (1997) ("Because the issue presented in this appeal involves a mixed question of law and fact, an interpretation of our rules with widespread ramifications is simply not at issue here."). Likewise, where an appeal raises the issue of application, not interpretation, of a statutory provision, it does not involve the correct and uniform administration of the criminal law and is not appealable by the State. *State v. Jones*, 321 Ark. 451, 903 S.W.2d 170 (1995); *State v. Mazur*, 312 Ark. 121, 847 S.W.2d 715 (1993).

*Ashley, supra.*

With these legal principles in mind, we must determine whether the issues raised by the State involve matters that are important to the correct and uniform administration of criminal law. The State has raised two issues for our review. First, the State requests that we declare that the trial court erred when it gave the jury the extreme-emotional-disturbance manslaughter instruction. We conclude that the first assignment of error raises a mixed question of fact and law concerning an alleged misapplication of a statute to the facts surrounding a particular case, as more fully developed below.

■ Second, the State requests that we declare that the trial court erred when it applied the provisions of Act 248 of 2001 to appellee's trial before that Act became effective.[1] This assignment of error relates to an alleged error made by the trial court in treating a newly passed statute as becoming effective before it becomes effective. Because the statute has now become effective, and because the subject of the statute relates to the effect of an acquit-

---

[1] Act 248 of 2001 provides in relevant part:

(2) When the affirmative defense of mental disease or defect is presented to a jury, the jury, prior to deliberations, shall be instructed regarding the disposition of a defendant acquitted on the grounds of mental disease or defect pursuant to § 5-2-314.

Act 248 of 2001 codified at Ark. Code Ann. § 5-2-312 (Supp. 2001).

tal on the grounds of a mental disease or defect, on which grounds appellee was not acquitted, we conclude that the second assignment of error is now moot, and any decision on that matter would be advisory. Because the question raised by the State does not present an issue with widespread ramifications, and is arguably raised simply to demonstrate the fact that the trial court erred, we decline to address the matter. *See Ashley, supra.*

With respect to the allegation that the trial court erred in giving a manslaughter instruction relating to the death of Marquis Hulum, we first consider under what circumstances the State may appeal from the giving of a particular jury instruction. In this case, the State argues that the extreme-emotional-disturbance manslaughter instruction should not have been given. The State does not argue that this manslaughter instruction does not relate to a lesser-included offense, but rather asserts that the trial court erred in his interpretation of the applicable statute.

We considered the issue of whether the State may challenge the giving or not giving of a particular jury instruction in *State v. McCormick*, 343 Ark. 285, 34 S.W.3d 735 (2000). In that case, the State sought review of the trial court's refusal to give a certain jury instruction. *Id.* We dismissed the State's appeal and explained that a proper State's appeal would include an issue of statutory interpretation and would not include a review of a trial court's application of a statutory provision. *Id.* In other words, we will review a trial court's refusal to give a jury instruction if it has misinterpreted a statute. However, we will not review a trial court's refusal to give a jury instruction based on an alleged misapplication of the statute to the facts surrounding a particular case. *See McCormick, supra.*

Applying this principle to the case *sub judice*, we must determine whether the trial court interpreted the language of Ark. Code Ann. § 5-10-104(a)(1)(Repl. 1997) to include mental disease or defect as the bases for giving the manslaughter instruction, or whether the trial court was merely applying the statute to the facts surrounding appellee's case. At the close of the evidence in appellee's case, the following colloquy, regarding whether the

extreme-emotional-disturbance manslaughter instruction should be given, occurred:

> MR. WRIGHT [*appellee's attorney*]: We believe that there has been testimony that the defendant acted under extreme—the influence of extreme emotional disturbance for which there is reasonable excuse; and, if the jury does not believe that Mr. Hulum suffered from a mental disease or defect to the extent that he could not conform his conduct or appreciate the criminality of his conduct, they could find that that was a reasonable excuse for his emotional disturbance. And that would qualify for the manslaughter instruction.

> THE COURT: Now what testimony is that?

> MR. WRIGHT: The testimony regarding the circumstances, your honor, from the lay witnesses that saw him there, the testimony from Dr. Kuo that he believed that he was acting in a psychotic manner. The tapes, I believe, definitely showed some emotional disturbance. Now, whether or not there was a reasonable explanation for it would be based on Dr. Kuo's testimony.

> MR. McCORMICK [The State's attorney]: Your, honor, I do not find—or the State's argument is that there is not a rational basis for that instruction to be given on what is the evidence in this case and we object to it.

> THE COURT: Actually, I think there's probably more basis in Dr. Mallory's report—and I think he alluded to it—to the issue of whether or not the child was kicked and might have died as a result of that, might be more of a basis for manslaughter.

> \* \* \*

> MR. McCORMICK: Your honor, if I can, I know what the court has said about Dr. Mallory's testimony. But, I think in terms of murder that—what the (a)(1) subsection of manslaughter refers to, Judge, is murder when it is a purposeful act. The defendant is not charged with committing the purposeful provision. In other words, the allegation's not that with the purpose to cause the death of Marquis Hulum he did cause the death. He's charged with knowingly causing the death of someone under the age of fourteen under circumstances manifesting extreme indifference to the value of human life by someone who is over the age of eigh-

teen. And I submit that that's what the purpose of that is for, the manslaughter provision. In other words, if there is an emotional—extreme emotional disturbance that affects someone's purposeful act, that may be taken into consideration. And the example that they tend to give is—you know, a husband catches his wife in the heat of passion with a lover is an example in the commentary that they refer to, Judge. . . .

THE COURT: Well, what about if the child were hit, kicked, or whatever as a result of crying—

\* \* \*

THE COURT: [W]ould that not be reckless?

\* \* \*

THE COURT: Well, what about a definition of manslaughter just dealing with the reckless issue?

\* \* \*

THE COURT: To me, that would be more appropriate than the one under the influence of extreme emotional disturbance for which there was a reasonable excuse.

MR. WRIGHT: And, I mean, your honor, again I just think that there has been some extreme emotional distress and it's been testified here.

THE COURT: You're talking about his toe coupled with the medication?

MR. WRIGHT: I'm talking about Dr. Kuo saying he believed that Eugene Hulum was—had a mental disease or defect on March 31, 2000. And Dr. Kuo stated that. And, if he had a mental disease or defect, that's an emotional disturbance for which there is a reasonable explanation.

THE COURT: Emotional disease or defect, is that not guilty by reason of mental disease or defect?

MR. McCORMICK: It is a complete defense, Judge.

MR. WRIGHT: Except, your honor, that the jury must not just find that he has a mental disease or defect; they must find that he has a mental disease or defect and he couldn't conform his conduct and he couldn't appreciate the criminality. There are peo-

ple that have a mental disease or defect that are convicted by these courts every day.

MR. MCCORMICK: Judge, it's at the time that he committed the offense, and it is a complete defense being that, because of my mental disease or defect, I could not conform my conduct. Therefore, it is a complete—therefore, whatever I did, I'm not guilty of that because of this, not the fact that I have it and it didn't manifest itself. That's not a defense.

MR. WRIGHT: In addition, Your honor, if the jury finds Mr. Hulum guilty of one of the more serious offenses, the State is not prejudiced and there is no reversible error by giving the manslaughter instruction.

THE COURT: On that basis the court will give it.

After reviewing the colloquy, it is clear that the trial court did not engage in a statutory interpretation of Ark. Code Ann. § 5-10-104(a)(1). The trial court was merely considering the evidence presented at trial and making a determination as to whether there was a rational basis for giving the manslaughter instruction. We have held that when there is a rational basis for a verdict acquitting a defendant of the offense charged and convicting him of an offense included in the offense charged, an instruction on the lesser-included offense should be given, and it is reversible error to fail to give such an instruction when warranted. *Rainey v. State*, 310 Ark. 419, 837 S.W.2d 453 (1992). We have also held that when there is the slightest evidence to warrant an instruction on a lesser included offense, it is error to refuse to give it. *Id.* The colloquy demonstrates that the trial court was reviewing the evidence presented at trial and attempting to determine whether the evidence warranted the giving of the manslaughter instruction.

Because the trial court was only applying the evidence presented at appellee's trial to Ark. Code Ann. § 5-10-104, we conclude that the issue raised by the State for our review presents a mixed question of fact and law. We do not review such issues. Because this appeal raises an issue of the application of section 5-10-104(a)(1) to the facts of this case, rather than an interpretation of the statute, the appeal does not involve the correct and uniform

administration of the criminal law and will not addressed by this court. Accordingly, we hold that this matter is not proper for a State's appeal.

Appeal dismissed.

GLAZE and IMBER, JJ., dissent.

TOM GLAZE, Justice, dissenting. It is difficult for me to understand why this court is so reluctant to accept the State's appeal to decide if the trial judge erroneously ruled in a criminal defendant's favor.[1]

When the terms of Criminal Rule 3(c) are met, the State's prosecutors, the Attorney General, and the people of this state have a right to be apprised if a trial judge's decision erroneously favors a criminal defendant and adversely affects Arkansas's uniform administration of the criminal law. In most situations, this court's review of a trial judge's legal decision will not affect a defendant's double jeopardy rights if or when this court declares the judge erred. In fact, the Attorney General concedes that would be the situation in the instant case. The present state appeal request cries out for review not only because the trial judge erred, but also because his decision now sets a precedent in the 6th Judicial District, if not in other judicial districts in this state.

This is a horrendous case involving appellant Eugene Hulum's killing his nineteen-month-old son. Although Hulum was charged with capital murder, he was found guilty of the lesser crime of manslaughter and given only ten years as a result of the trial court's having given the jury an erroneous instruction on manslaughter.

---

[1] *See* Ark. R. App. P.—Crim.3(c), which provides in relevant part as follows:

If the attorney general, on inspecting the trial record, is satisfied that error has been committed to the prejudice of the state, and that the correct and uniform administration of the criminal law requires review by the Supreme Court, he may take the appeal by filing the transcript of the trial record with the clerk of the Supreme Court within sixty (60) days after the filing of the notice of appeal.

At trial, Hulum first contended that he suffered from mental disease or defect when he killed his infant son, but the jury rejected that contention. Nonetheless, Hulum further argued the legal proposition that, "if the jury did not believe Hulum suffered from a mental disease or defect to the extent that he could not conform his conduct or appreciate the criminality of his conduct, [it] could find that [his mental disease or defect] was a reasonable excuse for his [extreme] emotional disturbance," which Hulum claimed supported his request for a manslaughter instruction. The trial court agreed with defense counsel, but Hulum cites no legal authority that entitled him to argue mental disease or defect, as part of the manslaughter instruction, when asserting his claim that he killed the infant while under the influence of extreme disturbance.

Our court has repeatedly held that, a jury cannot be instructed on manslaughter, as defined in Ark. Code Ann. § 5-10-104(a)(1), unless there was proof that the defendant incurred some kind of provocation, such as physical fighting, a threat, or a brandished weapon. See Kail v. State, 341 Ark. 89, 94-95, 13 S.W.3d 878, 880-81 (2000); Spann v. State, 328 Ark. 509, 514-515, 944 S.W.2d 537, 539-49 (1997); Franks v. State, 342 Ark. 167, 171, 27 S.W.3d 377, 379 (2000). Accordingly, that statute requires some showing of provocation before the instruction can be given. In sum, until the trial court's decision in this case, Arkansas had no case law or statutory authority that suggests "mental disease or defect" supplants the element of "extreme emotional disturbance" found in Arkansas's manslaughter statute; nor was there authority requiring that mental disease or defect should be added as an element to that offense. This court is wrong in not granting the State's appeal, since the Attorney General's request for review fits squarely within the dictates of Rule 3(c).

IMBER, J., joins this dissent.