STATE of Arkansas *v.* Debbie HAGAN-SHERWIN

CR 03-249 158 S.W.3d 156

Supreme Court of Arkansas
Opinion delivered April 8, 2004

[Rehearing denied May 20, 2004.*]

---

* GLAZE and BROWN, J.J., would grant rehearing.

*Mike Beebe*, Att'y Gen., by: *David R. Raupp*, Senior Ass't Att'y Gen., for appellant.

*Knutson Law Firm*, by: *Gregg A. Knutson*, for appellee.

BETTY C. DICKEY, Chief Justice. The State appeals an order of the Pulaski County Circuit Court, acquitting appellee Debbie Hagan-Sherwin on two counts of violating Ark. Code Ann. § 23-64-223 (Repl. 2001), and declaring a mistrial on the remaining four counts. The State claims that the trial court committed prejudicial error by instructing the jury with the choice-of-evils defense and a non-statutory defense of entrapment by estoppel. Ms. Hagan-Sherwin contends that this case is not properly appealable by the State under Rule 3 of the Arkansas Rules of Appellate Procedure—Criminal. We agree and dismiss the State's appeal.

On December 13, 2002, appellee Debbie Hagan-Sherwin was charged with six counts of violating Ark. Code. Ann. § 23-64-223 (Repl. 2001). Each count alleged that Hagan-Sherwin

either diverted or appropriated to her own use insurance premium monies in violation of the statute. In June 2002, the appellee's motion to dismiss the charges against her was denied, and the case went to trial in early October 2002.

At trial, the appellee testified that in 1997 she bought Campbell and Company insurance agency. After the purchase, she discovered that the company was worth over a million dollars less than the books had reflected. Campbell's wife performed an audit of Campbell and Company's books, confirming that over a million dollars was missing. Harold Campbell, the former owner of Campbell and Company, owned 20 percent of the bank, and the bank refused to renew appellee's one million dollar line of credit. The appellee failed to obtain a loan or other capital infusion in order to continue coverage for her insureds.

At a meeting with the Arkansas Insurance Department ("the Department"), appellee stated that she lacked sufficient cash to pay upcoming bills. The Department and the appellee agreed that, to avoid a lapse in coverage for her insureds, she must sell her agency. Bob Roddey of the Department told the appellee to do whatever she had to do to keep the doors open at her insurance agency. Hagan–Sherwin told both Roddey and Lanita Blasingame, also of the Department, that she was diverting monies from premiums in order to pay operating expenses. Gregory Shadducks, a former investigator for the Department, testified that they were aware that the appellee was using premium monies for operating expenses. Shadducks said at no time did they ever tell the appellee to stop, or that it was wrong, or that she could not use premium monies to keep the business in operation. Roddy testified that at no time did he tell her that using money from premiums to pay operating expenses was legal or that she should do that.

The appellee decided to try and sell her agency to two out-of-state companies, Travelers and Hartford. Unfortunately, according to the appellee, Joie Tester from the Department called the Travelers' financial division and told them Hagan–Sherwin was having financial difficulties, which summarily killed the deal. The company was put into receivership and later went out of business. The appellee testified, and the Department concurred, that had the sale gone through, not a single one of the appellee's insured would have lost one second of coverage.

The appellee moved for a directed verdict at the close of the State's case, again at the close of the defendant's case, and a third time, at the close of all evidence. All three motions for directed

verdict were denied. Over the State's objections, the circuit court instructed the jury on the affirmative defense of choice-of-evils from AMCI 2d 702, and the court gave a non-model jury instruction on the affirmative defense of entrapment by estoppel. The jury acquitted the appellee on counts two and six, but the jury could not reach a verdict on the remaining four counts. On January 15, 2003, the trial court entered an order consistent with those verdicts, and the State appealed.

 The State brings two points on appeal: 1) the circuit court erred by instructing the jury with the statutory defense of choice-of-evils; and 2) the circuit court erred by instructing the jury with a non-statutory affirmative defense of entrapment by estoppel, or alternatively that the instruction misstated the law. The threshold issue of this case is whether the State has properly brought this appeal under Ark. R. App. P.—Crim. 3. The rule provides in pertinent part:

> When a notice of appeal is filed pursuant to either subsection (a) or (b) of this rule, the clerk of the court in which the prosecution sought to be appealed took place shall immediately cause a transcript of the trial record to be made and transmitted to the attorney general, or delivered to the prosecuting attorney, to be by him delivered to the attorney general. If the attorney general, on inspecting the trial record, is satisfied that error has been committed to the prejudice of the state, and that the correct and uniform administration of the criminal law requires review by the Supreme Court, he may take the appeal by filing the transcript of the trial record with the clerk of the Supreme Court within sixty (60) days after the filing of the notice of appeal.

Ark. R. App. P.—Crim. 3(c) (2003). The appellee contends that this case is not appealable by the State because it does not raise an issue "important to the correct and uniform administration of the criminal law" as required under Rule 3(c). In *State v. Ashley*, we laid out the jurisdictional requirement for an appeal by the State as follows:

> In criminal cases, we accept appeals by the State in limited circumstances. *State v. McCormack*, 343 Ark. 285, 34 S.W.3d 735 (2000). This court has held our review of a State appeal is not limited to cases that would establish precedent. *State v. Gray*, 330 Ark. 364, 955 S.W.2d 502 (1997). Moreover, there is a significant and inherent difference between appeals brought by criminal defendants

and those brought on behalf of the State. The former is a matter of right, whereas the latter is not derived from the Constitution, nor is it a matter of right, but is granted pursuant to Rule 3. *State v. Guthrie, supra; State v. McCormack; supra.* We accept appeals by the State when our holding would be important to the correct and uniform administration of the criminal law. Rule 3(c). As a matter of practice, this court has only taken appeals which are narrow in scope and involve the interpretation of law. *State v. Banks,* 322 Ark. 344, 909 S.W.2d 634 (1995). Where an appeal does not present an issue of interpretation of the criminal rules with widespread ramifications, this court has held that such an appeal does not involve the correct and uniform administration of the law. *State v. Harris,* 315 Ark. 595, 868 S.W.2d 488 (1994).

Appeals are not allowed merely to demonstrate the fact that the trial court erred. *State v. Stephenson,* 330 Ark. 594, 955 S.W.2d 518 (1997); *State v. Spear and Boyce,* 123 Ark. 449, 185 S.W. 788 (1916). Thus, where the resolution of the issue on appeal turns on the facts unique to the case, the appeal is not one requiring interpretation of our criminal rules with widespread ramification, and the matter is not appealable by the State. *State v. Guthrie, supra; State v. Howard,* 341 Ark. 640, 19 S.W.3d 4 (2000); *State v. Gray,* 330 Ark. 364, 955 S.W.2d 502 (1997); *State v. Edwards,* 310 Ark. 516, 838 S.W.2d 356 (1992) ("Here, the State questions the trial court's application of our rule to the facts at hand and not its interpretation, so the appeal must be dismissed."). This court will not even accept mixed questions of law and fact on appeal by the State. *State v. Gray, supra; State v. Edwards, supra; State v. Hart,* 329 Ark. 582,952 S.W.2d 138 (1997) ("Because the issue presented in this appeal involves a mixed question of law and fact, an interpretation of our rules with widespread ramifications is simply not at issue here."). Likewise, where an appeal raises the issue of application, not interpretation, of a statutory provision, it does not involve the correct and uniform administration of the criminal law and is not appealable by the State. *State v. Jones,* 321 Ark. 451, 903 S.W.2d 170 (1995); *State v. Mazur,* 312 Ark. 121, 847 S.W.2d 715 (1993).

*State v. Ashley,* 347 Ark. 523, 66 S.W.3d 563 (2002).

■ As to the State's assertion of error in instructing the jury with the statutory defense of choice-of-evils, we first consider the circumstances under which the State may appeal the giving of a particular jury instruction. In the case *sub judice,* the State contends that the statutory affirmative defense of choice-of-evils

should not have been given in a case that does not involve imminent physical injury or destruction of property. In *State v. McCormack*, 343 Ark. 285, 34 S.W.3d 735 (2000), we considered the issue of whether the State may challenge the giving, or not giving, of a particular jury instruction. In *McCormack* the State appealed the trial court's refusal to give a certain jury instruction. There we dismissed and explained that a proper appeal by the State would include an issue of statutory interpretation and would not include a review of a trial court's application of a statutory provision. *Id.* In other words, we said we will review a trial court's refusal to give a jury instruction if it has misinterpreted a statute, but we will not review a trial court's refusal to give a jury instruction based on an alleged misapplication of the statute to the facts surrounding a particular case. *Id; see also State v. Hulum*, 349 Ark. 400, 78 S.W.3d 111 (2002) (*citing McCormack, supra.*).

Applying these principles to the present case, we must determine whether the trial court interpreted the language of Ark. Code. Ann. § 5-2-604 to include cases involving non-physical harm as the basis for giving the choice-of-evils instruction, or whether the trial court was merely applying the statute concerning choice-of-evils to the facts surrounding the appellee's case. Before the close of evidence the following colloquy occurred, regarding whether the choice-of-evils instruction should be given:

THE COURT: Does the State have any objection?

MR. SIMPSON: Yes, Your Honor, the State would object to the proffering the choice of evils jury instruction in this matter, and it's my understanding that the choice of evils jury instruction is when you're trying to divert—you steal a car because someone has been shot and needs a ride to the hospital or something like that. It's a physical injury. Or there's a fire or something like that as opposed to a business keeping its doors open or not.

MR. SIMPSON: Your Honor, if I could have just a moment, I know I've seen it and I've looked at the commentary stating the case when the choice of evils is allowed and under what circumstances, and I believe there's a strict instruction concerning the choice of evils.

Ms. LOONEY: 52604. (*sic*).

MR. SIMPSON: Your Honor, I also believe that, in the context of stealing, that's a mitigation factor for sentencing as opposed to a choice of evils, like stealing to feed your family.

Ms. LOONEY: May I comment or do you want me to wait for Mr. Simpson? I do have some assistance to the Court in regard to giving that instruction.

MR. SIMPSON: Your Honor, I believe subsection C of that also states that defense is unavailable in prosecution for any offense for which recklessness or negligence, as the case may be, suffices to establish culpability. Clearly, in this case, the culpable mental state is purposely, knowingly, or recklessly.

Ms. LOONEY: Your Honor, in regard to the instruction on the Arkansas Model Jury Instructions, Criminal, that particular paragraph is added, that paragraph being, the defense is not available if you find that Debbie Hagan-Sherwin was reckless in appraising the necessity for her conduct. That is true. The defense is not available, but the instruction can be given because that particular paragraph is only used when the offense with which the Defendant is charged includes reck-lessness as—or negligence to convict. And therefore, the jury can be instructed on the choice of evils and it would be up to them to determine whether or not it was available to Ms. Hagan based on whether or not they found her to be reckless or not.

Additionally, the case of *Parson v. State* 21 Ark. At 107-730 S.W.2d 250, 1987, stems from the proposition that, in order for this defense to be available, there must be proof of extraordinary attendant circumstances requiring emergency measures to avoid an eminent (*sic*) public or private injury. That is consistent with the evidence in this case, even testimony from the Department specifically in regard to there being an extraordinary circumstance, and then the testimony of the Defense witnesses, that would require emer-gency measures in order to avoid an eminent (*sic*) public or private injury, that being the loss of coverage for thousands of insureds in the State of Arkansas.

MR. SIMPSON: Your Honor, the supplementary commentary under *Coons v. State* (sic) the choice of evils, the defense of choice of evils was based upon a section of the model penal code. The Court went onto hold that the language was to be narrowly construed and applied that it was—and under that

case, it was determined that, because the evidence bore no similarity to the examples provided by the original commentary or the commentary to the model penal code, requested instruction was properly refused as inappropriate to the facts of the case.

In this case, the Defense is alleging that it was more important to keep the Hagan agency open than it was to protect the insureds who were purchasing policies.

Ms. LOONEY: No, I think—actually, I think Mr. Simpson misunderstands my point. It was more important to protect the insureds, i.e., by keeping the business open, and if need be, pursuant to understanding with the Insurance Department, the violation we're talking about is an alleged violation of using premium monies, and that choice of evil, i.e., use premium monies or let everybody lose their coverage, that choice of evils existed. And accordingly, the choice that was made was made in an effort to avoid—what is the word I'm looking for—a eminent (*sic*) public or private injury.

MR. SIMPSON: Your Honor, in this case, Ms. Looney just stated that the premium monies were used to keep the Hagan agency open so that policies would—so that the insureds would remain covered. Well, in this case, premium monies were used, and as a result, their policies were cancelled. So the justification that she's alleging that premium dollars be diverted so that insureds' policies remain in effect is not—that's not true because the fact that the premium monies were transferred for purposes other than what they were intended, those policies were cancelled or subject to questionability on the Delta Plastics and the other one that was subsequently reinstated, Berwin Square.

MR. BOYLES: Your Honor, if I may add, on *Coons versus State*, (*sic*) I think it's quite clear that the type of choice of evils is intended to be something similar to the ones listed in the original commentary. And the one thing you see in the original commentary lists destruction of buildings or other structures to keep fire from spreading, breaking of levies to prevent the flooding of a city causing, in the process, flooding of individuals' property, temporary appropriation of another's personal vehicle to remove seriously injured person to a hospital. These are all things dealing with an actual physical harm to persons and property as opposed to a financial loss,

which is perfectly compensable in a court of law at a later date. I think, for those reasons, even in looking at things in the light most favorable to Ms. Looney's argument, this instruction still should not be given.

THE COURT: I'm going to give it over objections of the State. I'll make a ruling on this next one. I'll number it at that time.

After reviewing the colloquy, it is clear that the trial court did not engage in a statutory interpretation of Ark. Code Ann. § 5-2-604. Instead, the trial court simply applied the statute to the evidence presented at trial.

 Because the State's argument merely raises the issue of application, and not the interpretation, of a statutory provision, the appeal does not involve the correct and uniform administration of the criminal law. *State v. Hulum*, 349 Ark. 400, 78 S.W.3d 111 (2002). Such an argument is not a proper basis for an appeal by the State, so this point on appeal must be dismissed.

For its next point on appeal, the State argues that the trial court erred in instructing the jury with a non-statutory affirmative defense of entrapment by estoppel. In Arkansas, an affirmative defense is defined as any matter: (1) so designated by a section of this code; or (2) so designated by a statute that is not a part of this code. Ark. Code Ann. § 5-1-111(d) (Repl. 1997).

The State attacks the trial court's instruction on entrapment by estoppel in two ways. First, the State contends that because entrapment by estoppel is not an affirmative defense designated by the criminal code or other statute, the trial court was not authorized to give such an instruction on this defense. The appellee does not dispute that entrapment by estoppel is not available under Arkansas law. However, she does assert that because the affirmative defense of entrapment by estoppel is derived from the due process protections guaranteed by the United States Constitution, the State cannot prohibit its use.

 In its brief, the State failed to address the appellee's argument that entrapment by estoppel is guaranteed by due process. Rather, it argues that Ms. Hagan-Sherwin's case is not the type of case where due process is concerned. In other words, the State contends that Ms. Hagan-Sherwin's particular circumstances do not warrant the entrapment-by-estoppel instruction in this particular case. Thus the State is not asking for an interpretation of the law, but rather a ruling on the application of the law to the facts

of this particular case. Because the State's argument merely raises the issue of application, and not the interpretation, of a statutory provision, the appeal does not involve the correct and uniform administration of the criminal law. *State v. Hulum*, 349 Ark. 400, 78 S.W.3d 111 (2002). Such an argument is not a proper basis for an appeal by the State, so this point on appeal must also be dismissed.

■ In its second attack on the entrapment-by-estoppel defense, the State contends that the trial court's instruction on entrapment by estoppel misstated the law. The State contends that even if this defense is available in Arkansas, the instruction should have been worded differently. However, the State failed to proffer a typewritten copy of its proposed instruction. This court has held on numerous occasions that the failure to proffer or abstract a proposed instruction precludes us from considering the issue on appeal. *Plotts v. State*, 297 Ark. 66, 759 S.W.2d 793 (1988); *Dixon v. State*, 327 Ark. 105, 937 S.W.2d 642 (1997); *Shockley v. State*, 282 Ark. 281, 668 S.W.2d 22 (1984).

■ In sum, the State's appeal merely presents issues of factual application. We do not accept such appeals by the State. Ark. R. App. P.—Crim. 3(c) (2003). *State v. Ashley,* 347 Ark. 523, 66 S.W.3d 563 (2002). In addition, we note that we express no opinion on the propriety of the instructions given by the trial court in this case.

Appeal dismissed.

GLAZE and BROWN, JJ., dissent.

ROBERT L. BROWN, Justice, dissenting. Today, the majority publishes an opinion in which it refuses to rule on the legitimacy of two jury instructions crafted and given for the first time by the Pulaski County Circuit Court. One instruction, the choice-of-evils instruction, is based on a statute in our criminal code. The second is a unique entrapment-by-estoppel instruction, which was given as an affirmative defense. Neither instruction is part of our Arkansas Model Criminal Instructions.

The majority says it is deciding the way it is because the instructions were given in connection with one factual situation and, thus, this case does not involve the uniform administration of justice as required under Rule 3. I disagree. For one thing, under

this reasoning, the State could never appeal the legitimacy of a new custommade jury instruction. But, more importantly, by not addressing the issue of the validity of the two instructions, this court does not preclude their use for another day in another trial. Instructions that find their way into our caselaw receive a certain imprimatur of approval.

The majority relies on *State v. McCormack*, 343 Ark. 285, 34 S.W.3d 735 (2000), as authority for dismissing this case, but that case is not apposite. In *McCormack*, we declined to take the case because it involved a determination of whether there was a rational basis for giving an instruction on a lesser-included offense. We decided that was an issue that required a factual analysis, that is, whether the facts provided a rational basis. But we specifically did not address the issue of whether the circuit court misinterpreted the statute in giving the instruction, because that issue was raised for the first time in the State's reply brief. Misinterpretation and error in giving the choice-of-evils instruction are the precise issues before this court in the instant case.

The same hold true of *State v. Hulum*, 349 Ark. 400, 78 S.W.3d 111 (2002), also adduced by the majority. It too is inapposite. That case concerned whether the circuit court erred in finding a rational basis for giving the manslaughter instruction. To state the obvious, the case before us does not involve the application of an existing lesser-included-offense instruction to the facts of a case, but, rather, whether a new instruction can be fashioned from a statute and then applied to a case by the circuit court when the case does not involve physical injury or destruction of property.

I would accept the State's appeal and consider whether the two instructions do wander far afield from what is appropriate and whether error was committed. Otherwise, this court would appear to be giving *carte blanche* approval for use of these instructions in future factual settings. In short, I would meet the issues raised by these instructions head on.

I respectfully dissent.

GLAZE, J., joins in this dissent.