2009 Ark. 375

**Billy Terrell ADAMS, Appellant,**

v.

**STATE of Arkansas, Appellee.**

No. CR 08–1353.

Supreme Court of Arkansas.

June 25, 2009.

Rehearing Denied Sept. 10, 2009.

James Law Firm, by: William O. "Bill" James, Jr., Little Rock, for appellant.

Dustin McDaniel, Att'y Gen., by: Eileen W. Harrison, Ass't Att'y Gen., for appellee.

ELANA CUNNINGHAM WILLS, Justice.

A White County jury convicted Appellant Billy Terrell Adams of capital murder and he received a sentence of life in prison without parole. Adams brings four points for reversal on appeal, arguing that the trial court erred by (1) improperly questioning a juror and failing to require additional deliberation before accepting the verdict as unanimous; (2) refusing to

strike a juror for cause; (3) denying Adams's motions for a directed verdict; (4) refusing Adams's proffered jury instructions. We affirm.

## I. *Sufficiency of the Evidence*

■ Because of double-jeopardy concerns, Adams's third point, challenging the sufficiency of the evidence, will be addressed first. *Grillot v. State*, 353 Ark. 294, 107 S.W.3d 136 (2003). Adams argues that the trial court erred by denying his motions for a directed verdict because ⌐₂the State did not present sufficient evidence to establish that he murdered Charles "Chucky" Cunningham with premeditation and deliberation. Specifically, Adams contends that "[b]y asserting the affirmative defense of mental disease or defect, [he] proved by a preponderance of the evidence that he did not [have] the requisite mental state" for a capital murder conviction.

■ An appeal from a denial of a motion for a directed verdict is a challenge to the sufficiency of the evidence. *Woolbright v. State*, 357 Ark. 63, 160 S.W.3d 315 (2004). Reviewing a challenge to the sufficiency of the evidence, this court determines whether the verdict was supported by substantial evidence, direct or circumstantial. *Id.* Substantial evidence is evidence that is forceful enough to compel a conclusion one way or the other beyond speculation or conjecture. *Benson v. State*, 357 Ark. 43, 160 S.W.3d 341 (2004). The reviewing court views the evidence in the light most favorable to the verdict, and considers only evidence that supports the verdict. *Clem v. State*, 351 Ark. 112, 117, 90 S.W.3d 428, 430 (2002).

■ Under Arkansas law a person commits capital murder if "[w]ith the premeditated and deliberated purpose of causing the death of another person, the person causes the death of any person." Ark. Code Ann. § 5–10–101(a)(4) (Repl.2006).

Premeditation and deliberation may be formed in an instant. *McFarland v. State*, 337 Ark. 386, 989 S.W.2d 899 (1999). Intent can rarely be proven by direct evidence; however, a jury can infer premeditation and deliberation from circumstantial evidence, such as the type and character of the weapon used; the nature, extent, and location of wounds inflicted; and the conduct of the accused. *Fudge* ⌐₃v. *State*, 341 Ark. 759, 20 S.W.3d 315 (2000).

At trial, Corporal Van Winkle of the Searcy Police Department testified that he was dispatched to investigate a report of a fight in progress on June 8, 2007. Arriving at the scene of the fight, Van Winkle observed Adams standing on the front porch of his home, holding a shotgun. As Van Winkle exited his police car, he witnessed Adams fire once into the victim's vehicle. The victim backed his vehicle out of the driveway and sped away. Adams then looked at Van Winkle, went inside his house, and closed the front door. After a trooper from the Arkansas State Police and another Searcy Police Department officer responded to Van Winkle's call for assistance, three officers eventually entered Adams's home and found him hiding in a closet. Van Winkle testified that after Adams was placed into handcuffs, he "appeared normal" and "he didn't look as though he had been in an altercation."

A second eyewitness, Robert Weaver, testified that he was fueling a truck at his place of employment near Adams's home when he heard an altercation. Walking to a fence, he saw Adams and Cunningham fighting as two females watched. At one point in the fight, Cunningham was on top of Adams, "pounding him" in the words of Weaver, until a female "grabbed [Cunningham] and made him stop." Adams got up from the ground and went inside his house, and Cunningham got inside his vehicle parked in Adams's driveway. Weaver tes-

tified that Adams then "came back outside and was talking to [Cunningham] through the window of the vehicle," before he went back inside his house a second time and reemerged with a shotgun. According to Weaver, as Cunningham began to drive away, Adams fired the shotgun.

Other evidence presented by the State included testimony from Dr. Adam Craig, medical examiner for the Arkansas State Crime Lab, that Cunningham's autopsy showed that his death resulted from "fatal, non-survivable" wounds caused by shotgun pellets. Dr. Craig testified that Cunningham bled to death within "one or two minutes to five plus or minus minutes" after receiving the shotgun blast.

Adams bases his assertion that he proved that he did not have the requisite mental state for a capital murder conviction on the expert testimony of a forensic psychiatrist. Dr. Bob Gale testified for the defense and opined that Adams's "judgment" and "ability to control his emotions went out the window" due to "mental disease," and that there was nothing that he read in police reports or that he "heard directly or indirectly from the Defendant that indicates premeditation" in the murder of Cunningham. However, Dr. Gale also testified that Adams was competent to stand trial, knew right from wrong, and understood the shotgun's operation and effect.

A "jury is not bound to accept the opinion testimony of any witness as true or conclusive, including the opinion testimony of experts." *Navarro v. State,*

371 Ark. 179, 191, 264 S.W.3d 530, 539 (2007). This court's "standard of review of a jury verdict rejecting the defense of mental disease or defect is whether there is any substantial evidence to support the verdict." *Id.* at 190, 264 S.W.3d at 538. Viewing the evidence in the light most favorable to the State, substantial evidence was presented to the jury to support a verdict that Adams murdered Cunningham with premeditation and deliberation.

## II. *Jury Poll*

Adams argues that the trial court erred in questioning a juror due to the answer she gave regarding her vote during the jury poll. Specifically, Adams asserts that the verdict was not unanimous, and that Arkansas statutes and case law regarding jury polls required the trial court to send the jury out for further deliberations.[1] According to Adams, the "consequence of the continued questioning by the trial judge is that it created a situation where the trial judge not only violated statutory procedure but committed such a serious error and consequent violation of [his] rights as to require reversal of [his] conviction." The State asserts that Adams's failure to raise this point at trial by making a contemporaneous objection precludes appellate review.

After the jury rendered its guilty verdict, Adams requested that the trial court poll the jury and the following colloquy took place:

COURT: Ms. Crisler?

> [u]pon a verdict's being rendered, the jury may be polled at the instance of either party, which consists of the clerk or judge asking each juror if it is his or her verdict. If one (1) answers in the negative, the verdict cannot be received.

---

1. For statutory authority on this point, Adams cites both Ark.Code Ann. § 16–64–119(d)(1) and Ark.Code Ann. § 16–89–128. Section 16–64–119 was part of the Civil Code of 1868. It pertains to civil trials and is, therefore, inapplicable here. Section 16–89–128 was part of the Criminal Code of 1868. It addresses jury polls in criminal trials and provides that

CRISLER: That was the way we all voted.

COURT: That was the way you voted.

CRISLER: No, not. I didn't really want to but I was convinced.

COURT: Okay ma'am. The question is whether that is your verdict. Yes or no?

CRISLER: Yes. That was the way I voted.

The failure to make a contemporaneous objection to an irregularity of a jury verdict constitutes a waiver of the irregularity. *Smith v. State*, 310 Ark. 30, 832 S.W.2d 497 (1992). In *Smith*, the jury sentenced the defendant to a term of forty years in prison. However, when the jury was polled, a juror responded that her individual verdict was "Ten years." *Id.* at 31, 832 S.W.2d at 498. The trial court then questioned the juror as follows:

COURT: You're telling me this is not your verdict?

JUROR: Yes, that's my verdict.

COURT: This is your individual verdict?

JUROR: Um-hmm.

*Id.* at 31–32, 832 S.W.2d at 498. At the conclusion of the jury poll, the trial court in *Smith* asked, "Is there any reason known to anyone why sentencing shouldn't be imposed at this time?" *Id.* at 32, 832 S.W.2d at 498. The defense did not respond and the trial court imposed the sentence. As Adams argues in the present case, the appellant in *Smith* argued that the trial court erred in accepting the jury verdict, because the poll indicated that the verdict was not unanimous. This court refused to consider the argument because it was raised for the first time on appeal, stating that we have "consistently refused to consider arguments on appeal in the absence of a specific, contemporaneous objection at trial." *Id.* at 32, 832 S.W.2d at 499.

Citing *Anderson v. State*, 353 Ark. 384, 108 S.W.3d 592 (2003), however, Adams asserts that "an error by the trial court involving any feature of the fundamental right to a trial by jury is so great that the issue will be considered by an appellate court, even absent an objection by trial court counsel." In *Anderson*, this court stated that "a contemporaneous objection is generally required to preserve an issue for appeal, even a constitutional issue." *Id.* at 395, 108 S.W.3d at 599. However, the court discussed four exceptions to the general rule as set forth in *Wicks v. State*, 270 Ark. 781, 606 S.W.2d 366 (1980), noting that the exceptions are "narrow exceptions that are to be rarely applied." *Anderson*, 353 Ark. at 396, 108 S.W.3d at 600. The exceptions are applicable under the following situations:

(1) when the trial court fails to bring the jury's attention to a matter essential to its consideration of the death penalty itself; (2) when the defense counsel has no knowledge of the error and hence no opportunity to object; (3) when the error is so flagrant and so highly prejudicial in character as to make it the duty of the court on its own motion to have instructed the jury correctly; and (4) Ark. R. Evid. 103(d) provides that the appellate court is not precluded from taking notice of errors affecting substantial rights, although they were not brought to the attention to the trial court.

*Id.* at 395, 108 S.W.3d at 599.

In *Anderson*, this court first determined that the appellant effectively made a *Wicks* argument on appeal without specifically citing *Wicks*. The appellant in *Anderson* contended that "the prosecutors comments to potential jurors during voir dire constituted such a serious error that the circuit court should have intervened and admonished the jury as to the correct statement of the law" *Id.* at 396, 108 S.W.3d 592. Here, although Adams cites *Anderson*, he

does not mention or discuss the underlying language of any *Wicks* exception or indicate which exception applies to the present case. Thus, unlike *Anderson*, Adams fails to effectively make an argument for application of a *Wicks* exception that would permit this court to address the issue for the first time on appeal. Moreover, we note that the facts of this case do not present a situation of comparable seriousness as that presented in *Anderson*. *See also Greene v. State*, 343 Ark. 526, 37 S.W.3d 579 (2001).

Accordingly, this court will not address this point. Here, as in *Smith*, Adams failed to make a contemporaneous objection at the conclusion of the jury poll when the trial judge inquired if there was any reason not to release the jury and impose the sentence.

### III. *Juror Selection*

Adams argues that the trial court erred when it refused to grant Adams's request to strike juror Martin for cause, because she "had indicated her equivocation regarding following the law in this case." Thus, Adams contends, the trial court violated his Constitutional right to an impartial jury. The State argues that the trial court did not abuse its discretion in denying Adams's motion to strike juror Martin.[2]

In *Jones v. State*, 374 Ark. 475, 478, 288 S.W.3d 633, 636 (2008) (citations omitted), this court stated as follows regarding the qualification of jurors:

> A juror is presumed to be unbiased and qualified to served, and the burden is on the appellant to prove otherwise. It is for the trial court to decide whether a juror is qualified, and that finding will not be reversed absent a showing of abuse of discretion. We have held that the appellant must demonstrate prejudice in arguing that a juror should have been removed.

Further " '[i]n matters involving impartiality of jurors, we have consistently deferred to the trial court's opportunity to observe jurors and gauge their answers in determining whether their impartiality was affected.' " *Id.* at 479, 288 S.W.3d at 636 (quoting *Echols v. State*, 326 Ark. 917, 991, 936 S.W.2d 509, 548 (1996)).

In asserting that the trial court erred by allowing a biased juror to be seated,

---

2. Citing *Watson v. State*, 289 Ark. 138, 709 S.W.2d 817 (1986), the State also contends that Adams failed to preserve this point for appellate review, asserting that "[w]hen a biased juror is forced upon a defendant, he must make an appropriate record at the end of voir dire." In *Watson*, the appellant argued that, because "he used two peremptory jury challenges for jurors who should have been dismissed for cause, he was forced to allow two jurors objectionable to him to be seated." *Id.* at 139, 709 S.W.2d at 818. This court affirmed the trial court "because the appellant did not make a record showing the manner in which the jurors he complained of were objectionable." *Id.* Specifically, the *Watson* court stated that "to preserve this error for appeal, we require the appellant to show prejudice, i.e., that he was forced to accept a juror against his wishes," but that "[n]o such record was made at the close of

jury voir dire." *Id.* In *Watson*, however, the appellant did not object to the two jurors at issue until after the trial began, and after a seated juror was dismissed for misconduct and replaced with an alternate. The basis of this court's affirmance of the trial court was not the lack of a timely objection. We concluded that "[w]hether or not the objection came too late, the appellant did not present to the trial court and has not presented to us any possible basis for finding the last two jurors to have been objectionable." *Id.* Thus, *Watson* does not support the State's argument that a party must make an additional objection at the conclusion of voir dire, and the facts are clearly distinguishable. Here, Adams objected to seating Martin as a juror during voir dire and requested that the trial court dismiss her for cause. Accordingly, this point is preserved for our review.

Adams cites Martin's responses to questioning during voir dire stating that she could "try" to listen to the other jurors and reach a unanimous verdict, that taking a life "irked" her due to her religious convictions, and that she could "try to be" a fair juror. However, Martin also answered "Yes" when asked "Do you believe in self-defense"; answered "Yes" when asked |₁₀if she could "follow the law as the Judge gives it to you, in what we call the jury instructions at the end"; and answered "I could try, yes" and "I could do it" when asked if she could listen to both sides. Review of the record shows that juror Martin did not evidence any specific bias against Adams, nor did she express any opinion concerning Adams's guilt. In *Corley v. State*, 162 Ark. 178, 257 S.W. 750, 751 (1924), this court stated that

> [t]he rule is that a juror is not disqualified from trying a person accused of a particular crime because he has a prejudice against the crime charged, if such prejudice against a particular crime would not prevent the juror from impartially considering the question of the guilt of the accused.

██ Adams fails to overcome the presumption of impartiality accorded juror Martin, nor has he demonstrated actual prejudice resulting from the trial court's refusal to strike her from the jury. Although juror Martin indicated her general feelings on the subject of murder during voir dire, she did not evidence any particular bias against Adams. The trial judge noted that juror Martin expressed "an opinion that is held by probably most people." Mindful of this court's deference to the trial court's opportunity to observe jurors and weigh their answers in determining questions of impartiality, we hold that the trial court did not abuse its discretion in refusing to strike juror Martin for cause.

## IV.  *Proffered Jury Instructions*

██ For his final point for reversal, Adams argues that the trial court erred in refusing to admit his proffered jury instructions, because the proffered instructions were "more inclusive and a more clear statement of the law on the various issues than the model jury instructions."

██ A trial court's ruling on whether to submit a jury instruction will not be reversed |₁₁absent an abuse of discretion. *Grillot v. State*, 353 Ark. 294, 107 S.W.3d 136 (2003). "A non-AMI Criminal instruction should be given only when the trial judge finds that the AMI Criminal instruction does not state the law or that AMI Criminal does not contain a needed instruction on the subject." *Clark v. State*, 374 Ark. 292, 305, 287 S.W.3d 567, 576 (2008). Even if an appellant's proffered instructions contain correct statements of the law, it is not error for the trial court to refuse to submit them to the jury. *Id.*

Here, the AMI Criminal instructions submitted to the jury addressed mental disease or defect and lesser-included offenses. In addition to instructions on the elements of capital murder, the jury was instructed on lesser included offenses of first-degree murder, second-degree murder, and manslaughter. With respect to Adams's defense of mental disease or defect, the jury was specifically instructed that Adams was guilty of manslaughter if "he committed the act under the influence of extreme emotional disturbance for which there was a reasonable excuse." Further, the jury was instructed that "[a] person is not criminally responsible for his conduct, if, at the time of that conduct, as a result of mental disease or defect, he lacked the capacity to appreciate the criminality of his conduct."

Adams does not assert that the AMI jury instructions submitted to the jury in-

accurately reflected the law. Thus, despite his contention that his proffered instructions were "more inclusive" and "a more clear statement of the law on the various issues," the trial court did not err in refusing to submit them to the jury.[3]

$\lfloor_{12}$The record in this case has been reviewed for other reversible error as required by Ark. Sup.Ct. R. 4–3(i) (2009), and none has been found.

Affirmed.

3.  The trial court stated that Adams's seventeen pages of proffered instructions appeared to be statements of legal principles taken from "case law or head notes or some other legal book or treatise." Further, the trial court found that some of the instructions proffered by Adams incorrectly stated legal issues, and the instructions that did correctly reflect legal principles duplicated the AMI criminal instructions submitted to the jury by the court.