2010 Ark. 337

**James E. CLEMONS, Appellant,**

v.

**STATE of Arkansas, Appellee.**

**No. CR 09–1182.**

Supreme Court of Arkansas.

Sept. 23, 2010.

David O. Bowden and Rickey H. Hicks, Little Rock, for appellant.

Dustin McDaniel, Att'y Gen., by: Brad Newman, Ass't Att'y Gen., for appellee.

JIM HANNAH, Chief Justice.

Appellant James Clemons was convicted by a Union County jury of the capital murder of Billy Ponder and sentenced to life imprisonment without the possibility of parole. On appeal, Clemons contends that the circuit court (1) erred in denying his motion for directed verdict because the State failed to prove by substantial evidence that he committed capital murder, (2) abused its discretion in refusing to allow testimony about a letter written by a jailhouse informant who testified as a State's witness at trial, and (3) erred in denying his motion to suppress his statement given to police because he was not timely provided with a copy of the statement. Because Clemons was sentenced to a term of life imprisonment, our jurisdiction is pursuant to Arkansas Supreme Court Rule 1–2(a)(2) (2010). We affirm the circuit court.

Billy Ponder was found stabbed to death on April 28, 1992, at his flower shop in El Dorado. An empty cash-register till and several loose coins were found on the floor of the shop. Police conducted interviews and obtained physical evidence from the scene; however, despite the investigation, the case remained open for several years until DNA tests that were not available in 1992 caused Clemons to be identified as a suspect. In 2006, physical evidence from the crime scene was sent to the Arkansas State Crime Laboratory for retesting. In October 2007, the crime lab informed the police that DNA found at the scene matched Clemons's DNA, which was on file in CODIS, the national DNA databank.

Clemons first contends that the State failed to prove by substantial evidence that he committed capital murder. He asserts that the State failed to prove he was present when the murder occurred and that physical evidence offered to prove his presence at the crime scene did not constitute proof that he committed the murder. He also asserts that a jailhouse informant's testimony that Clemons admitted to committing the crime is not credible.

An appeal from a denial of a motion for a directed verdict is a challenge to the sufficiency of the evidence. *Adams v. State*, 2009 Ark. 375, 326 S.W.3d 764.

In reviewing a challenge to the sufficiency of the evidence, this court determines whether the verdict was supported by substantial evidence, direct or circumstantial. *Id.* Substantial evidence is evidence that is forceful enough to compel a conclusion one way or the other beyond speculation or conjecture. *Id.* Circumstantial evidence may be sufficient to support the finding of guilt in a criminal case, but it must exclude every other reasonable hypothesis consistent with innocence. *Lockhart v. State,* 2010 Ark. 278, 367 S.W.3d 530. Whether the evidence excludes every other reasonable hypothesis is a question for the jury to decide. *See Edmond v. State,* 351 Ark. 495, 95 S.W.3d 789 (2003). Upon review, this court's role is to determine whether the jury resorted to speculation and conjecture in reaching its verdict. *See id.*

Clemons was convicted of murder perpetrated while in the commission of a felony, with attempted robbery or robbery as the underlying felony. At the time of the crime, the capital-murder statute provided, in relevant part, that a person commits capital murder if he commits or attempts to commit robbery and in the course of and in furtherance of the robbery or in immediate flight therefrom, he causes the death of any person under circumstances manifesting extreme indifference to the value of human life. Ark.Code Ann. § 5–10–101(a)(1) (Supp.1991). A person commits robbery if, with the purpose of committing a felony or misdemeanor theft or resisting apprehension immediately thereafter, he employs or threatens to immediately employ physical force upon another person. Ark.Code Ann. § 5–12–102(a) (Supp.1991).

The record reveals that Ponder was killed some time after 4:15 p.m., on April 28, 1992. Katherine Buzzard testified that, at about 4:15, she went to the drive-through window of Ponder's flower shop to pay for some flowers. Buzzard stated that Ponder came to the window, and she paid him in bills and coins. According to Buzzard, while speaking to Ponder, she did not observe anything "out of the ordinary."

Jerry Sandifer, a friend of Ponder's, testified that he called Ponder at the flower shop at about 5:00, but he got no answer. Ponder's wife, Rebecca, testified that she called the flower shop at around 5:30 after receiving a phone call at home from a customer whose flowers had not been delivered, but no one answered. She said that she called several more times, but never got an answer. She stated that, at first, she was not concerned, but she later became "uneasy" and decided to drive to the shop. She arrived there at around 7:15 or 7:20 and noticed that the back door was open. When she walked to the back door and looked inside the flower shop, she saw Ponder's body lying on the floor.

Jerald Fifer, who was working at a dry cleaners across from the flower shop on the day of the murder, talked to police during their initial investigation and told them that he had seen a black man on a bicycle around 3:30 that afternoon, but he did not know who it was. Subsequently, in April 2008, police showed Fifer a photo lineup that included a picture of Clemons, and Fifer stated that the man on the bicycle looked like Clemons.

After the crime lab identified Clemons as a suspect based on DNA testing in 2007, it asked for a "known" DNA sample from Clemons to make a comparison. CO-DIS indicated that Clemons was living in Marathon County, Wisconsin, and a judge in Wisconsin issued a search warrant to obtain oral swab and fingerprint samples from Clemons. Chief Ricky Roberts and Sergeant Jamie Morrow of the El Dorado Police Department traveled to Wisconsin in February 2008 to obtain the DNA samples and to interview Clemons. Chief

Roberts read Clemons the *Miranda* warnings, and Clemons signed the waiver form and talked to the officers.

Sergeant Morrow testified about Clemons's statement, noting that Clemons offered more than one version of events. He said that, at first, Clemons denied knowing Ponder; then, Clemons stated that he knew Ponder and had been in the flower shop and bought flowers. Clemons first said that he was walking when he stopped by the flower shop, but he later said that he was riding a bicycle. Clemons also told officers that Ponder had approached him and asked if he could masturbate Clemons in exchange for money. He told officers that Ponder offered him $25, then he said that Ponder offered him $30. Clemons also stated that he took money from the cash register after Ponder said that he did not have any cash.

Clemons said that the incident took place before 5:00 in April 1992. He said that he had been in town working for a carnival and left town with the carnival the next day. He stated that he stopped by the shop because he wanted to buy flowers for his mother to thank her for "all she had done." Clemons repeatedly denied killing Ponder.

Chief Roberts also testified about Clemons's statement. According to Roberts, Clemons stated that he knew Ponder was gay or bisexual and that Ponder offered to pay him if he could masturbate Clemons. Clemons claimed that he and Ponder pulled down their pants, and Ponder masturbated both Clemons and himself. Clemons admitted that he ejaculated, and he said that, after the incident, Ponder gave him money, and he took his flowers and left. Then, Clemons said that Ponder did not have the money, so he told Ponder to get money out of the register. Clemons said that Ponder gave him the money; then, he changed his story and said, "I reached over," and "I took the money."

Clemons told Chief Roberts that when he left the shop, he rode his bicycle across town to his mother's house while carrying a vase of flowers. Clemons's sister, Alice Clemons Alford, testified that she did not recall her brother ever bringing flowers to their mother.

Christopher Glaze, a DNA analyst at the State Crime Lab, testified that Clemons's DNA was present on a Newport cigarette butt found in an ashtray at the crime scene. Forensic DNA examiner Jennifer Beaty testified that DNA from semen stains found on Ponder's blue jeans matched the DNA of Clemons. Ponder's wife testified that Ponder changed clothes at least once a day and never would have worn the same pair of pants to work more than once, so anything recovered from the jeans he was wearing when he died would have been placed there that day. She also testified that her husband always carried a billfold, but that his billfold was never returned to her with his personal effects.

Ponder's daughter, Stephanie Ponder Lacy, also testified that Ponder did not wear his clothes more than one day. She also related that her father liked to have his work clothes, including his blue jeans, dry cleaned, and that he liked them heavily starched. In addition, she stated that, at the time of the murder, her father would not have had pre-made flower arrangements in vases for walk-in customers to purchase.

Wilfred Frazier, an inmate at the Arkansas Department of Correction, also testified for the State. Frazier stated that he met Clemons when they were housed together in the Union County jail. He said that the two discussed their crimes and that Clemons told him he had stabbed Ponder and taken his wallet from him.

Dr. Charles Kokes, Chief Medical Examiner for the State of Arkansas, testified that Ponder sustained a total of nineteen separate stab wounds. Most of the wounds were on the chest, but Ponder also suffered wounds to his hands, arms, shoulder, back, abdomen, and thigh. Dr. Kokes testified that, collectively, these wounds were fatal and that the manner of death was homicide.

We begin by addressing Clemons's argument regarding Frazier's testimony. Clemons asks that this court disregard Frazier's testimony because it is not credible. Specifically, he claims that it would have been "physically impossible" for him to have had a conversation with Frazier while in jail. In support of this argument, he points to testimony from a jailer that Clemons and Frazier were housed in different pods at the jail.

We have held that the credibility of witnesses is a matter for the jury's consideration. · *Davenport v. State*, 373 Ark. 71, 281 S.W.3d 268 (2008). Where the testimony is conflicting, we do not pass upon the credibility of the witnesses and have no right to disregard the testimony of any witness after the jury has given it full credence, where it cannot be said with assurance that it was inherently improbable, physically impossible, or so clearly unbelievable that reasonable minds could not differ thereon. *Id.*

Moreover, there is further evidence to support Clemons's conviction. Clemons admitted to police that he was at the flower shop on the day of the murder before 5:00. Ponder was last known to be alive at 4:15, when Katherine Buzzard paid him for flowers at the shop's drive-through window. Despite the fact that Buzzard gave Ponder cash at 4:15, when police arrived at the crime scene, no money was found in the cash register. In addition, Ponder's billfold, which he was known to carry in his pocket, was not found in his pocket and was not returned to his wife with his personal effects. The presence of Clemons's DNA on Ponder's jeans and on a Newport cigarette butt found in an ashtray at the flower shop also link Clemons to the crime scene. And, Clemons stated that he engaged in a sexual act with Ponder on the day of the murder.

Clemons's statement to the police had many inconsistencies. He denied ever having been in the shop; then, he admitted that he had been there on the day of the murder and had engaged in a sexual act with Ponder. He told police that Ponder paid him $25 for the act; then, he said he was paid $30. He said that Ponder gave him the money, but later told police that he reached for the money and took it out of the cash register. Clemons also told police that, after engaging in a sexual act with Ponder, he left the shop and rode his bicycle to his mother's house, some four miles across town, all while carrying a vase of flowers, even though Ponder's daughter said that pre-made arrangements were not available.

Here, the jury was not forced to resort to speculation and conjecture and could infer from the testimony and evidence presented at trial that Clemons robbed or attempted to rob Ponder and that Clemons killed Ponder. There is substantial evidence to support the conviction for capital murder, and the circuit court did not err in denying Clemons's motion for directed verdict.[1]

Clemons next contends that the circuit court abused its discretion in refus-

---

1. In his brief on appeal, Clemons also asserts that the circuit court erred in denying his motion for directed verdict because the State failed to prove that he acted with premedita- tion and deliberation. This argument is without merit. Clemons was charged with capital-felony murder, not murder based on premeditation and deliberation. Thus, the

ing to allow testimony about a letter written by an inmate who testified as a State's witness at trial. A decision to admit or exclude evidence is within the sound discretion of the circuit court. *Smith v. State*, 2009 Ark. 453, 343 S.W.3d 319. In addition, this court will not reverse an evidentiary ruling absent a showing of prejudice. *Sauerwin v. State*, 363 Ark. 324, 214 S.W.3d 266 (2005).

As previously noted, Wilfred Frazier, who met Clemons when they were both inmates at the Union County jail, testified that Clemons told him that he stabbed Ponder and stole his wallet. Frazier stated that he wrote a letter about Clemons's admission to the prosecutor's office and, after he was sentenced to the Arkansas Department of Correction, he wrote a letter about the admission to Judge Carol Anthony. Frazier testified that he did not write the letter to Judge Anthony in an attempt to receive a reduction in sentence, explaining that he had already been sentenced when he sent the letter.

Clemons called Gregg Parrish, who was Frazier's attorney. At a bench conference, the prosecutor told the circuit court that Clemons's purpose for calling Parrish was to show that Judge Anthony had let Parrish see Frazier's letter to her. The prosecutor argued that, absent Clemons's defense counsel presenting the letter for authentication, Parrish should not be allowed to testify. Defense counsel stated that he did not have the letter, and the circuit court stated that evidence concerning the letter would not be allowed. To make a record, defense counsel stated that Judge Anthony told him she had received the letter, but had discarded it. Defense counsel further stated that, in the letter, Frazier sought a reduction in sentence in exchange for his testimony. Further, defense counsel stated that both Parrish and Judge Anthony read the letter, but neither one of them kept it. Again, the circuit court stated that Parrish could not testify about the letter unless defense counsel had a copy of it. The prosecutor added that defense counsel had the opportunity to cross-examine Frazier and to inquire about his motivation for testifying. The circuit court then concluded that the testimony about the letter would be excluded as hearsay.

We are precluded from addressing Clemons's argument that the circuit court erred in refusing to allow Parrish's testimony because Clemons failed to challenge the basis of the circuit court's ruling. In this case, the circuit court excluded the testimony as hearsay. Hearsay is a statement made by an out-of-court declarant that is repeated in court by a witness and is offered into evidence for the truth of the matter asserted. *Bowen v. State*, 322 Ark. 483, 911 S.W.2d 555 (1995). Clemons made no argument below, nor does he make the assertion here, that Parrish's testimony was not hearsay. He does not contend that Parrish's testimony was not offered for the truth of the matter asserted, nor does he contend that the testimony, while hearsay, was admissible under an exception to the hearsay rule. Addressing a challenge to the exclusion of Parrish's testimony would require this court to develop an argument on Clemons's behalf. This court will not research and develop arguments for appellants. *See, e.g., Flanagan v. State*, 368 Ark. 143, 243 S.W.3d 866 (2006).

Clemons next asserts that the circuit court erred in denying his motion to suppress a statement he gave to the police because he was not timely provided a copy

State was not required to prove premeditation and deliberation. *Compare* Ark.Code Ann. § 5–10–101(a)(1) *with* § 5–10–101(a)(4).

of the statement.[2] Specifically, he claims that the circuit court should have suppressed his statement because the State committed a discovery violation that caused him to suffer prejudice. Prior to trial, Clemons filed a motion to suppress a DVD of his statement to police, contending that the DVD should be excluded because he had not been timely provided a usable copy of it. Defense counsel stated that, while he had received a copy of the DVD, he had tried to play it on five different DVD players, but he was unable to view it.[3] After Sergeant Morrow and Chief Roberts testified about the statement, the prosecutor showed the circuit court a letter indicating that he had sent a copy of the DVD to defense counsel on January 13, 2009, which preceded an earlier trial date in the case.[4] The prosecutor added that the statement had been available at the prosecutor's office and the police department. The circuit court viewed the letter and read defense counsel's mailing address aloud; at that time, defense counsel revealed that the prosecutor had sent the DVD to his former address.

The hearing on the motion took place three days before trial, and defense counsel stated that, at that time, he had still not been able to view the DVD. Defense counsel contended that his lack of time to prepare would prejudice his client, and he urged the circuit court to suppress the statement. The circuit court asked defense counsel if he wanted a continuance due to the problem with the DVD, and defense counsel responded, "No, I am not asking for a continuance. I don't want a continuance." Defense counsel again contended that he was being prejudiced by not yet having viewed the DVD. Nevertheless, he again stated, "I don't want a continuance."

Clemons argues here, as he did below, that the circuit court erred in denying his motion to suppress because the State did not timely provide him with a usable copy of the DVD. The State counters that, by rejecting the circuit court's offer of a continuance to give him time to view the statement, Clemons has waived his argument that the statement was not timely disclosed. We agree. In *Tester v. State,* 342 Ark. 549, 30 S.W.3d 99 (2000), after noting that a discovery violation could be cured by the grant of a continuance, we held that the appellant's rejection of the offer of a continuance barred his claim that a statement should have been suppressed because it had not been timely disclosed. Here, like the appellant in *Tester,* Clemons refused the circuit court's offer of a continuance to afford him more time for preparation. Because Clemons rejected the circuit court's offer of a continuance, he cannot claim that the circuit court's denial of his motion to suppress is reversible error.

Pursuant to Arkansas Supreme Court Rule 4–3(i), the record has been examined for all objections, motions, and requests made by either party that were decided adversely to appellant, and no prejudicial error has been found.

Affirmed.

2. We note that in Clemons's reply brief, he contends that the circuit court erred in refusing to suppress the videotaped statement of Wilfred Frazier. We assume that the reference to Frazier was an inadvertent error, as Clemons's motion to suppress refers to his own statement.

3. The prosecutor stated that the DVD had to be played on a computer with a media player rather than in a standard DVD player.

4. Ultimately, Clemons was tried on March 16, 17, and 18, 2009.