2010 Ark. App. 726

**Michael COOK, Appellant**

v.

**STATE of Arkansas, Appellee.**

**No. CA CR 10–291.**

Court of Appeals of Arkansas.

Nov. 3, 2010.

Robert Michael Golden, Little Rock, for appellant.

Dustin McDaniel, Atty. Gen., LeaAnn J. Irvin, Asst. Atty. Gen., Little Rock, for appellee.

JOSEPHINE LINKER HART, Judge.

Michael Cook was convicted in a bench trial of possession of drug paraphernalia with the intent to manufacture methamphetamine. He was sentenced to 120 months in the Arkansas Department of Correction. On appeal, he argues that the trial court erred in denying his directed-verdict motion. We reverse and dismiss.

An appeal from a denial of a motion for a directed verdict is a challenge to the sufficiency of the evidence. *Clemons v. State*, 2010 Ark. 337, 369 S.W.3d 710. In reviewing a challenge to the sufficiency of the evidence, this court determines whether the verdict was supported by substantial evidence, direct or circumstantial. *Id.* Substantial evidence is evidence that is forceful enough to compel a conclusion one way or the other beyond speculation or conjecture. *Id.*

When we review a challenge to the sufficiency of the evidence, we affirm the conviction if there is substantial evidence to support it, when viewed in the light most favorable to the State. *Dodson v. State*, 341 Ark. 41, 14 S.W.3d 489 (2000). Viewing the evidence in the light most favorable to the State means that we consider only the evidence that supports the verdict. *Morgan v. State*, 2009 Ark. 257, 308 S.W.3d 147. In addition, the credibility of witnesses is an issue for the trier of fact, not the appellate court. *Cluck v. State*, 365 Ark. 166, 226 S.W.3d 780 (2006). The fact-finder is free to believe all or part of a witness's testimony and may resolve questions of conflicting testimony and inconsistent evidence. *Id.*

The legally significant facts in this case are not in dispute. Lieutenant James Kulesa, a narcotics officer with the Lonoke County Sheriff's Department, testified that on March 2, 2009, he, along with Investigator Keith Eaton, went to 17 Opal Street in Ward. The residence belonged to Erik Richardson (Richardson) and his wife, Cynthia. Kulesa was attempting to make contact with Richardson and Fred Wittenburg. Kulesa found Cook present in the house along with a babysitter. Kulesa stated that he learned that Cook was staying with the Richardsons temporarily while he recovered from surgery. When Kulesa asked the babysitter where he could find Richardson and Wittenburg, she directed Kulesa to a storage shed behind the house. Eaton did a "walk through" of the storage building and observed items that he recognized as components of a meth lab. The police "backed off" and obtained a search warrant.

In the storage building, they found evidence of methamphetamine manufacture, including a pill soak, coffee filters stained with a residue that contained iodine, phosphorus powder and methamphetamine, an HCl generator, damp matchbook striker plates, and empty pseudoephedrine blister packs. They also found burnt aluminum foil with methamphetamine residue and a "glass smoking device." They also found a sleeping area, where he understood Wittenburg was residing.

In Richardson's residence, the police found what they believed were "snorting devices," which, in the picture that the State introduced into evidence, appeared to be plastic straws, near the sofa that served as Cook's bed. In a box of cleaning supplies located in Cook's automobile, police found a glass jar containing "a paper towel or some kind of towel in there with a reddish color to it."

Forensic drug chemist Norman Kemper of the Arkansas State Crime Lab testified that he tested many of the items, and they indicated that methamphetamine had been manufactured using iodine and red phosphorous. He noted that among the items was a SoBe bottle that served as a "reac-

tion vessel" that contained red phosphorus, iodine, and methamphetamine. Further, Kemper stated that two glass jars and a quantity of unused coffee filters could be used to make methamphetamine in the future. He admitted, however, that he did not test the contents of the glass jar found in Cook's automobile, although he stated the contents "appeared" to be iodine crystals and had a smell "consistent with" iodine. Kemper also admitted that he did not test the "snorting devices" that were found in the residence.

Richardson, who was declared Cook's accomplice as matter of law, testified that Wittenburg was renting the storage shed from him and using it as his residence. Richardson confirmed that Cook was staying in the main house. Richardson claimed he had personal knowledge that Cook was a methamphetamine cook. He noted, however, that he was unaware of Cook ever cooking meth on his premises. Richardson admitted that he gave Cook some pills to manufacture methamphetamine, but he never saw Cook do anything with the pills. Richardson admitted visiting the shed, and he asserted that Cook went back there "more frequently than I did."

On appeal, Cook argues that the State failed to show that he possessed, either actually or constructively, drug paraphernalia that could be used in the manufacture of methamphetamine. Further, he asserts that the State failed to prove that he possessed drug paraphernalia with the intent to use that paraphernalia to manufacture methamphetamine. Cook acknowledges that law enforcement officers found several items that could be used in the manufacture of methamphetamine in a storage shed behind the residence where he was staying. However, he asserts that there was insufficient evidence to link him to the contraband found in the shed. He notes that Richardson was declared an accomplice as a matter of law, which means that the law requires that the testimony be corroborated. Cook argues that the State presented insufficient corroboration, and if Richardson's testimony is excluded, there is no evidence linking him to the shed. Further, he asserts that even if we were to find that Richardson's testimony was corroborated, there is no evidence of a substantive nature that proves his connection to the alleged crime. Cook acknowledges that the State argued that the material found in his car was iodine, but he notes that it was never positively identified as iodine or any other substance that can be used in the production of methamphetamine. We agree with Cook that the verdict is not supported by substantial evidence.

We note from the outset that the State has never asserted that possession of the suspected iodine or suspected "snorting devices" was sufficient to sustain Cook's conviction. At trial, the State merely described the suspected iodine as "suspicious." The issue before us is, therefore, whether there was sufficient evidence that Cook possessed the meth lab components found in the storage shed. As the State notes, our supreme court stated that "possession need not be actual, physical possession, but may be constructive, when one controls a substance or has the right to control it." *Osborne v. State*, 278 Ark. 45, 643 S.W.2d 251 (1982). Constructive possession can be implied when the contraband is found in a place immediately and exclusively accessible to the defendant and subject to his control, or to the joint control of the accused and another, but neither actual nor exclusive possession of the contraband is necessary to sustain a charge of possession. *Id.* However, where there is joint occupancy of a premises, there must be "additional factors" from

which the factfinder can infer possession. *Id.*

■ We agree that there is some question as to whether the State proved that the jar found in Cook's automobile contained iodine. However, we do not believe this case turns on whether or not this substance was iodine—for the purpose of our analysis, we will assume that it was. It is worth noting that possession of the suspected iodine was itself based on "constructive possession," in that Cook did not physically possess the suspected iodine. Rather, because it was found in his vehicle, he had the right to control the material. But even if we assume that the material was iodine, and that iodine is a necessary ingredient in the methamphetamine manufacturing process, it does not give Cook control or the right to control the specific meth lab components that were found in the shed that was rented by Richardson to Wittenburg any more than it gives Cook control, or the right to control, any other meth lab.

■ In the first place, mere possession of a single ingredient that could be used in methamphetamine production cannot constitute substantial evidence of possession of drug paraphernalia with intent to manufacture methamphetamine. *See Gilmore v. State,* 79 Ark.App. 303, 87 S.W.3d 805 (2002). Second, and more importantly, there is nothing in the record that leads us to conclude that a single ingredient would entitle the possessor to control, or the right to control, a meth lab in a building to which Cook had no property right. In this case, the only evidence regarding the shed established that it was owned by Richardson and rented to Wittenburg. In this regard, the instant case is clearly distinguishable from *Morgan v. State,* 2009 Ark. 257, 308 S.W.3d 147, where the contraband was found on property that was apparently within the curtilage of the Morgan's residence, which gave Morgan the legal right to control it.

■ Likewise, the suspected "snorting devices," which were found in a common area of Richardson's home, albeit near the sofa where Cook had been sleeping, were insufficient to prove that Cook had control or the right to control the paraphernalia discovered in the shed. While we are concerned that the crime lab chose not to test these items for residue, as with the iodine, we begin our analysis by assuming that these devices were indeed used to consume methamphetamine. However, we find the presence of ingesting paraphernalia to be insufficient to invest Cook with control or the right to control the paraphernalia in the shed. It is no more logical to infer that Cook had control or the right to control the contents in the shed based on his constructive possession of suspected "snorting devices" than it is to infer that one has control or the right to control a slaughterhouse because one possesses a steak knife.

■ However, we do not end our inquiry there. While the suspected iodine and suspected snorting devices fail to establish that Cook had control or the right to control the paraphernalia found in the shed, we must still consider whether they might corroborate Richardson's accomplice testimony. A felony conviction cannot be had upon the testimony of an accomplice unless corroborated by other evidence tending to connect the defendant with the commission of the offense. *Wertz v. State,* 374 Ark. 256, 287 S.W.3d 528 (2008). Corroboration is not sufficient if it merely shows that the offense was committed and the circumstances thereof. *Id.* Corroborating evidence must be evidence of a substantive nature since it must be directed toward proving the connection of the accused with a crime

and not directed toward corroborating the accomplice's testimony. *Id.* It need not be sufficient standing alone to sustain the conviction, but it must, independent from that of the accomplice, tend to connect to a substantial degree the accused with the commission of the crime. *Id.; see Green v. State*, 365 Ark. 478, 231 S.W.3d 638 (2006). The test for corroborating evidence is whether, if the testimony of the accomplice were completely eliminated from the case, the other evidence independently establishes the crime and tends to connect the accused with its commission. *Id.* While corroborating evidence may be circumstantial so long as it is substantial, evidence that merely raises a suspicion of guilt is insufficient to corroborate an accomplice's testimony. *Id.*

In the case at bar, it is not disputed that there was evidence that methamphetamine manufacturing had occurred in the shed. Accordingly, it was independently established that the crime of possession of drug paraphernalia with intent to manufacture was committed. The evidence "tending" to connect Cook with the crime is far more tenuous. For the same reasons that we found the presence of the suspected snorting devices to be of no legal effect with regard to Cook's constructive possession of the paraphernalia in the shed, we hold that they are insufficient to corroborate Richardson's testimony. The suspected iodine presents a closer question. It is at least an ingredient in methamphetamine production and it was found relatively close to the shed. Given the low showing required—the evidence need not connect the defendant to the crime, but rather only *tend* to connect the defendant to the crime, we believe that it is sufficient to corroborate Richardson's testimony.

We are mindful that the only evidence that even places Cook in the shed, at any time, comes from Richardson who said that Cook occasionally visited the shed. Richardson also testified that Cook was a meth cook and that he had given Cook pills to make methamphetamine. However, Richardson stated that he was never aware of methamphetamine production taking place at his residence. Accordingly, while this testimony might create the *suspicion* that Cook was somehow involved in methamphetamine manufacturing, it does not provide any evidence regarding Cook's control or right to control contraband found in another person's residence when he was not physically present in the residence or where none of his personal effects were found. *Cf. Walley v. State*, 353 Ark. 586, 112 S.W.3d 349 (2003) (presence of personal items held to be the required linking factors for establishing constructive possession); *Darrough v. State*, 322 Ark. 251, 908 S.W.2d 325 (1995) (operation, part ownership, and daily presence at a fenced salvage yard not readily accessible to others where contraband was found along with related items found hidden on his personal property held sufficient to establish constructive possession); *Fitting v. State*, 94 Ark.App. 283, 229 S.W.3d 568 (2006) (physical presence in the residence of another where accomplice testified that residence was loaned to appellant to make methamphetamine and appellant was "cleaning up" after a "cook" held sufficient to establish constructive possession). As this court stated in *Gilmore*, "No one should be deprived of his liberty or property on mere suspicion or conjecture. Where inferences are relied upon, they should point to guilt so clearly that any other conclusion would be inconsistent. This is so regardless of how suspicious the circumstances are." 79 Ark.App. 303, 308, 87 S.W.3d 805, 808.

Reversed and dismissed.

ROBBINS, J., agrees.

GRUBER, J., concurs.