2011 Ark. App. 213

**Donnie Ray SLATER, Appellant**

v.

**STATE of Arkansas, Appellee.**

**No. CA CR 10–787.**

Court of Appeals of Arkansas.

March 16, 2011.

Rehearing Denied April 27, 2011.

Marjorie E. Rogers, Little Rock, for appellant.

Dustin McDaniel, Atty. Gen., Karen Virginia Wallace, Little Rock, for appellee.

RITA W. GRUBER, Judge.

A jury convicted appellant Donnie Ray Slater of delivery of cocaine, and he was sentenced to forty years' imprisonment. His sole argument on appeal is that the evidence was insufficient to support the verdict. We agree, and we reverse and dismiss his conviction.

The testimony at trial showed that Officer Houston Talley and Officer David Chastain of the Arkansas State Police, narcotics division, were working with a confidential informant named Lance West. On April 11, 2007, the officers and Mr. West attempted to conduct a controlled buy from Mr. Slater. Officer Talley testified that, before the controlled buy, they searched Mr. West and his truck to make sure that he had no drugs, money, or weapons and then gave him forty dollars for buy money. They also fitted Mr. West with an audio recorder.

They then followed Mr. West to Horton Motor Company, where Mr. Slater worked, and parked across the street to conduct surveillance. Mr. West parked his truck in the shop's parking lot, got out, and went inside the shop. Both officers testified that Mr. West came out of the shop with a black male (who was never identified) and the two men got into Mr. West's truck. Mr. West started to leave the parking lot when a car pulled into the lot and Mr. West backed up his truck. Mr. West's passenger got out of the truck and went back inside the shop. At that point, Officer Talley testified that the black, male driver of the other car (later identified as Mr. Slater) got out of his car, approached the driver's side door of Mr. West's truck, and went inside the shop with Mr. West's passenger. Mr. West got

out of his truck but stayed outside the building. After a minute, Mr. Slater came back outside and began talking with Mr. West. Officer Talley testified that the two men were behind Mr. West's truck, that he could see their heads and bodies, and that they were moving around. Neither of the officers witnessed an exchange of anything between the two men. After conversing for three or four minutes, Mr. West got in his truck and left the parking lot. The officers followed him and met at a predetermined location, where Mr. West gave the officers what was later determined to be .22 grams of crack cocaine. Mr. West no longer had the buy money in his possession.

Officer Talley also explained that most of the time when a confidential informant gets in the car and is asked to drive somewhere, that means there are no drugs at that place, and they are going to pick the drugs up somewhere else. He said that he confirmed that this is what Mr. West and the first black male were doing by listening to the audio recording. Officer Chastain testified that he could say "according to the audio recording, the first black male didn't make a sale. No one else was there besides black male number two [Mr. Slater]."

The audio recording was played for the jury. Most of the recording was inaudible. At the beginning of the recording, an unidentified male asked, "Where's Donnie at?" An unidentified male responded, "He went up the road" and said that he would be back in a minute. An unidentified male asked, "What do you need man?" and the response was, "I'm looking for a forty." Officer Chastain explained that a "forty" generally means forty dollars' worth of crack cocaine. Later in the recording, an unidentified male said, "Make a left," and shortly thereafter an unidentified male said, "There's Donnie right there. Right there."

Here is the transcript of the recording from that point, beginning at the time that Mr. Slater appears on the scene and ending when Mr. West leaves the parking lot in his truck:

UNIDENTIFIED MALE: Is that Donnie?

UNIDENTIFIED MALE: Right there. It looks like him there.

UNIDENTIFIED MALE: [Inaudible.]

UNIDENTIFIED MALE: [Inaudible.]

UNIDENTIFIED MALE: [Inaudible.] Put a [inaudible] transmission in there.

UNIDENTIFIED MALE: Oh, is ya?

UNIDENTIFIED MALE: Yeah.

UNIDENTIFIED MALE: My tires [inaudible].

UNIDENTIFIED MALE: All right. You want me to pull up there?

UNIDENTIFIED MALE: No, [inaudible].

UNIDENTIFIED MALE: Meet you at Little John Quick?

UNIDENTIFIED MALE: [Inaudible.]

UNIDENTIFIED MALE: Yeah, everything.

UNIDENTIFIED MALE: How long have you been in business?

UNIDENTIFIED MALE: About a month. [Inaudible.]

UNIDENTIFIED MALE: How much you want for it?

UNIDENTIFIED MALE: Five hundred dollars for the motor and transmission. [Inaudible] I'll holler at you. We'll see you later.

On this evidence, the jury convicted Mr. Slater of delivery of cocaine. On appeal, Mr. Slater contends that the evidence was insufficient to support a conviction because there was no direct evidence that he delivered cocaine to Mr. West and because the jury had to resort to speculation to conclude that Mr. Slater, rather than the oth-

**774**

er unidentified black male, sold the drugs that Mr. West turned over to the officers.

In reviewing a challenge to the sufficiency of the evidence, we determine whether the verdict was supported by substantial evidence, direct or circumstantial. *Clemons v. State*, 2010 Ark. 337, at 2, 369 S.W.3d 710, 712. Substantial evidence is evidence that is forceful enough to compel a conclusion one way or the other without resort to speculation or conjecture. *Id.* Circumstantial evidence may be sufficient to support the finding of guilt in a criminal case, but it must exclude every other reasonable hypothesis consistent with innocence. *Lockhart v. State*, 2010 Ark. 278, 367 S.W.3d 530. Whether the evidence excludes every other reasonable hypothesis is a question for the jury to decide. *Clemons*, 2010 Ark. 337, at 3, 369 S.W.3d at 712. Upon review, this court's role is to determine whether the jury resorted to speculation and conjecture in reaching its verdict. *Id.*

The evidence supporting the verdict in this case is slim. Mr. West was searched before the alleged transaction to ensure that he did not have any drugs and he was given forty dollars as buy money. He returned to the officers after the alleged transaction with about forty dollars' worth of cocaine and no buy money. While Mr. West was under the officers' surveillance, he came in contact with two men. He went into the shop with the first man, came out with the man, got into his truck, and the two started to leave the parking lot. At that point Mr. Slater drove up, Mr. West backed up, and the passenger got out of Mr. West's truck and went inside. Mr. Slater got out of his car and also went inside the shop. Mr. Slater then came back out, at which time he and Mr. West had a three-or-four-minute con-

versation. Mr. West got in his truck, left the lot, and met the officers at a predetermined destination.

A mostly inaudible recording of Mr. West's conversations with these men was introduced into evidence. Officer Talley testified that he confirmed his belief that Mr. West and the unidentified black male were getting into Mr. West's truck to go get drugs somewhere when he listened to the audio recording. Officer Chastain said that he could tell from the audio recording that the first black male did not make a sale and that Mr. Slater was the only other person there.

What is missing in this case is critical. No one testified that he saw Mr. Slater sell drugs to Mr. West. The confidential informant, Mr. West, did not testify;[1] neither of the surveillance officers saw the drug buy take place; no camera recorded the buy; and the audio recording does not evidence any exchange between any of the men recorded. Also important here is the fact that the confidential informant came into contact with more than one potential seller. Indeed, the only time Mr. West was out of the officers' observation was when he was inside the shop with the unidentified black male before Mr. Slater ever appeared on the scene.

While we appreciate the officers' knowledge, training, and experience in these types of drug transactions, we hold that this evidence is not forceful enough to compel a conclusion that Mr. Slater sold drugs to Mr. West. We find it just as likely based on the testimony and audio recording that the unidentified male provided the drugs to Mr. West. Because the evidence fails to exclude every other reasonable hypothesis other than Mr. Slater's guilt and the jury had to resort to speculation and

---

1. Mr. West passed away before trial.

conjecture in reaching its verdict, we reverse and dismiss Mr. Slater's conviction.

Reversed and dismissed.

PITTMAN, HART, and BROWN, JJ., agree.

ROBBINS and WYNNE, JJ., dissent.

JOHN B. ROBBINS, Judge, dissenting. When reviewing a challenge to the sufficiency of the evidence we are required to view the evidence in the light most favorable to the State, considering only the evidence that supports the verdict. *Terry v. State,* 366 Ark. 441, 236 S.W.3d 495 (2006). In my view, the inculpatory circumstantial evidence presented by the State in this case amounted to substantial evidence supporting Mr. Slater's conviction for delivery of cocaine. Therefore, I respectfully dissent from the majority's opinion reversing his conviction.

In this case, the confidential informant was searched and given buy money, and there was ample evidence that he purchased cocaine because he provided a quantity of the drug to the police after the undercover operation was completed. And contrary to Mr. Slater's argument, there was substantial evidence that Mr. Slater was the person who sold the cocaine. The evidence showed that Mr. West came into contact with only two men during the police surveillance. There was testimony that when an informant goes to make a drug purchase and someone gets in his vehicle and leaves, it indicates that they are going somewhere else to buy drugs. In the present case, Mr. West drove from the business to the parking lot exit with the first man apparently giving directions, but he stopped and backed up when Mr. Slater drove into the parking lot. Then Mr. West parked his truck, and after Mr. Slater talked briefly with Mr. West, Mr. Slater went into the office and returned

alone, and the two men engaged in further conversation. The view of the men was obstructed by the truck, but Officer Talley testified that he could see their heads and bodies moving around as they spoke. Although the audio recording was of low quality and did not capture the drug transaction itself, it did indicate that when Mr. West entered the office he told the first man that he wanted to see Donnie and was looking for a "forty." Officer Chastain testified that from the conversation on the recording he could say that the first man did not make a sale. Mr. Slater was the only other person the informant contacted during the relevant time frame, and this evidence was of sufficient force to compel the jury's conclusion that Mr. Slater delivered the cocaine without resorting to speculation or conjecture. Because the evidence presented by the State excluded every other reasonable hypothesis other than Mr. Slater's guilt, I would affirm his conviction.

WYNNE, J., joins in this dissent.