STATE of Arkansas *v.* Michael AUD

CR 02-479 95 S.W.3d 786

Supreme Court of Arkansas
Opinion delivered January 23, 2003

*Turbeville Law Firm, P.A.*, by: *Richard N. Turbeville*, for appellant.

*Mark Pryor*, Att'y Gen., by: *Lauren Elizabeth Heil*, Ass't Att'y Gen., for appellee.

RAY THORNTON, Justice. On October 11, 1998, appellee, Michael Aud, was arrested for driving while intoxicated. A breathalyzer test administered at the time of arrest indicated a reading of 0.10% as the blood alcohol content.[1]

At a bench trial held on November 26, 2001, and November 30, 2001, the results from appellee's breathalyzer test, together with evidence of possible contamination of the breath sample, the standard of accuracy of the breathalyzer machine, evidence concerning the circumstances leading to the stop, including the results

---

[1] At the time of the arrest, the effective statute provided:

 (a) It is unlawful and punishable as provided in this act for any person who is intoxicated to operate or be in actual physical control of a motor vehicle.

 (b) It is unlawful and punishable as provided in this act for any person to operate or be in actual physical control of a motor vehicle if at that time there was one-tenth of one percent (0.10%) or more by weight of alcohol in the person's blood as determined by chemical test of the person's blood, urine, breath or other bodily substance.

Arkansas Code Annotated § 5-65-103 (Repl. 1997)(superseded).

of field sobriety tests, and other evidence was presented to the trial court.

At trial, the State argued that if a criminal defendant receives a 0.10% BAC reading from the breathalyzer machine, and this reading is admitted into evidence, an irrebuttable presumption of guilt is created. The trial court did not accept this argument, and based on the evidence presented at trial, the trial court determined that there was insufficient evidence to support a conviction for driving while intoxicated.

 It is from appellee's acquittal that the State appeals. The State brings its appeal pursuant to Rule 3 of the Appellate Rules of Criminal Procedure. The rule provides:

> If the Attorney General, on inspecting the trial record, is satisfied that error has been committed to the prejudice of the State, and that the correct and uniform administration of the criminal law requires review by the Supreme Court, he may take the appeal by filing the transcript of the trial record with the clerk of the Supreme Court within sixty (60) days after the filing of the notice of appeal.

Ark. R. App. P.—Crim. 3(c). In *State v. Hulum*, 349 Ark. 400, 78 S.W.3d 111 (2002), we outlined the requirements for a State's appeal. We explained that in criminal cases:

> We accept appeals by the State when our holding would be important to the correct and uniform administration of the criminal law. Rule 3(c). As a matter of practice, this court has only taken appeals which are narrow in scope and involve the interpretation of law. *State v. Banks*, 322 Ark. 344, 909 S.W.2d 634 (1995). Where an appeal does not present an issue of interpretation of the criminal rules with widespread ramifications, this court has held that such an appeal does not involve the correct and uniform administration of the law. *State v. Harris*, 315 Ark. 595, 868 S.W.2d 488 (1994).
>
> Appeals are not allowed merely to demonstrate the fact that the trial court erred. *State v. Stephenson*, 330 Ark. 594, 955 S.W.2d 518 (1997); *State v. Spear and Boyce*, 123 Ark. 449, 185 S.W. 788 (1916). Thus, where the resolution of the issue on appeal turns on the facts unique to the case, the appeal is not one

requiring interpretation of our criminal rules with widespread ramification, and the matter is not appealable by the State.

*Hulum, supra.*

■ With these legal principles in mind, we must determine whether the issue raised by the State involves a matter that is important to the correct and uniform administration of criminal law. In its only point on appeal, the State argues that "the trial court erred as a matter of law by acquitting the appellee on the basis that the breathalyzer is not an accurate method for measuring blood-alcohol content." We have carefully reviewed the proceedings before the trial court and the trial court's findings, and we conclude that the trial court did not acquit appellee based on a broad finding that results from breathalyzer tests are suspect. In fact, we note that the trial court found that "the test is probably as accurate as we can possibly get" and the trial court stated that "I think it's a fairly accurate test." Rather than challenging the accuracy of all breathalyzer machines, the trial court weighed the evidence presented at appellee's trial.[2] The trial court considered evidence regarding the possible contamination of appellee's air sample,[3] and testimony from the breathalyzer machine operator who stated that a variance of plus or minus 0.01% met the standards for approval of the breathalyzer machine set by the Arkansas Regulations for Alcohol Testing Manual established by the

---

[2] In its review of the evidence, the trial court noted that resolution of the case depended upon the credibility of the witnesses. Specifically, the trial court stated:

> I think that the expert kind of helps to give the court a little understanding as to the mechanics and the science of how the breathalyzer works and why you should or should not accept it. But the bottom line is, whatever the results are, the accuracy—they [do not] fall within the range where the defendant was either . . . way above the legal limit or below the legal limit, but right at the line.

> . . .

> So the question really becomes . . . one of credibility. So do you believe the defendant when he says he only had four beers or do you believe that he had more? So, that, that's essentially what it boils down to.

[3] The factors identified by the trial court as possible contaminates were: (1) appellee's having blown into the machine multiple times without cleaning the equipment, and (2) the presence of chewing tobacco in appellee's mouth at the time the breathalyzer test was performed.

Department of Health. As previously noted, the trial court accepted the accuracy of the breathalyzer machine, and stated that the reading of 0.10% was right on the line. After reviewing the evidence, and determining the credibility of the witnesses, the trial court found that the State did not prove appellee's guilt beyond a reasonable doubt. Under these circumstances, we conclude that the State has failed to establish a proper appeal. Specifically, we conclude that the only issue presented in this appeal is whether the trial court erred in its consideration of the evidence. Resolution of this issue turns on facts that are unique to this case. Because resolution of this matter does not present an issue of interpretation of our criminal rules with widespread ramifications, we hold that this appeal does not involve the correct and uniform administration of the law. Accordingly, we dismiss the appeal.

ARNOLD, C.J., not participating.

GLAZE and IMBER, JJ., dissent.

TOM GLAZE, Justice, dissenting. This court's refusal to review appellee Michael Aud's case on appeal will produce dire future consequences in the trying of DWI cases across the state. The trial judge who acquitted Mr. Aud was well aware that, in doing so, his interpretation of Ark. Code Ann. § 5-65-103 (Repl. 1997),[1] would invite "more and more experts" to testify, challenging the validity of blood-alcohol content tests. Under this court's prior cases, the court has held this 1983 statute has made driving with a blood alcohol content of .10% or more illegal, per se. *Lovell v. State*, 283 Ark. 425, 678 S.W.2d 318 (1984). The *Lovell* decision stated that a defendant was innocent until the state proved beyond a reasonable doubt that he or she was driving and that their blood alcohol measurement was .10% or more. *Id.* at 430. Until the case now before us, the State sustained its burden by proving that the defendant was driving and that his "blood-alcohol *measurement* was .10% or more."

---

[1] The 2001 Amendment changed the blood-alcohol content threshold to .08%. *See* Acts 2001, No. 561, § 2. Sections 5-65-206 and 5-65-204(e) referred to herein, infra, have also been modified by Act 561.

A driver clearly retains the right to question whether the chemical analysis was performed according to methods approved by the Arkansas State Board of Health. *See* Ark. Code Ann. § 5-65-206 (Repl. 1997). Moreover, the driver also has the right to have a test administered by a physician or qualified technician, registered nurse, or other person qualified to administer a complete chemical test — blood, breath, or urine — in order to question the government's tests. *See* Ark. Code Ann. § 5-65-204(e) (Repl. 1997).

In the instant case, the trial court has added and engrafted another defense to Arkansas's DWI laws by allowing a purported expert witness[2] to give his opinion questioning the breathalyzer test administered to Mr. Aud, stating that, while Aud's blood-alcohol *measurement* was .10% or more, such a measurement does not necessarily mean Aud actually *had* a blood-alcohol content of .10%. Again, until now, this court has upheld the constitutionality of Arkansas's DWI laws as a reasonable means of protecting the public safety, and that the State proves its case when it shows that the defendant driving has a blood-alcohol *measurement* of .10% or more.

The trial court in the present case strongly urged the parties to appeal to determine whether our DWI statutory provisions could be considered and interpreted to permit a defendant's expert testimony to show that a defendant's actual blood-alcohol content may differ from the statutory blood-alcohol measurement proved by the State. The trial court's expressed concern was that, if Mr. Aud prevails on appeal, more and more experts will be employed to offer drivers charged with DWI a defense that was not heretofore provided or recognized. Because the interpretation of this State's DWI laws will clearly have widespread ramifications and this court's holding would be important to the correct and uniform administration of our DWI statute, this court should take this on review instead of dodging a very difficult, controversial issue.

IMBER, J., joins this dissent.

---

[2] The State objected to Mr. Aud's expert witness because the witness was not qualified to operate a BAC machine.