Jimmy JONES *v.* STATE of Arkansas

CR 08-429 288 S.W.3d 633

Supreme Court of Arkansas
Opinion delivered October 23, 2008

*Bill Luppen,* for appellant/cross-appellee.

*Dustin McDaniel,* Att'y Gen., by: *Brad Newman,* Ass't Att'y Gen., for appellee/cross-appellant.

ANNABELLE CLINTON IMBER, Justice. Appellant Jimmy Jones was convicted by a Pulaski County jury of first-degree murder with a firearm enhancement. He was sentenced as a habitual offender to terms of thirty years' imprisonment for the murder and eight years' imprisonment on the firearm enhancement. He now appeals, contending that the circuit court erred in refusing his request to strike a juror for cause due to the juror's professed fear of retribution. The State cross-appeals, asking this court to declare error with regard to the circuit court's reliance on *Brooks v. State,* 328 Ark. 32, 941 S.W.2d 409 (1997), in allowing Jones to introduce reverse victim-impact evidence during the sentencing phase. Due to the State's cross-appeal, this case is required by law to be heard by this court. Ark. R. App. P.–Crim. 3 (2008). Our jurisdiction is therefore pursuant to Arkansas Supreme Court Rule 1-2(a)(8) (2008). We find no error and affirm on direct appeal and on cross-appeal.

*Direct Appeal*

Jones was charged by felony information on May 11, 2007, with the capital murder of Marcus Hickman. His trial commenced on January 15, 2008. After the State had presented its case-in-chief and while the defense was presenting its case, a bailiff informed the court during a recess that a juror had approached him and told him that she knew a spectator in the courtroom. The juror was brought into the court's chambers to discuss the matter on the record with the court and counsel. The juror initially indicated that she wanted to speak only with the judge and that she did not want to discuss the problem in the presence of the other people in chambers, which included Jones. She asked the court if she could leave the jury without a reason. When the court informed her that she could not leave unless excused by the court, she asked to make a telephone call. After making this call, the juror disclosed that she had seen a woman whom she knew in the courthouse the previous day, before she was selected as a juror. At that time, the juror was not aware that the woman she saw was connected to Jones's trial. The juror knew the woman because the woman's children had at one time attended the school where the juror was a teacher. When they saw each other, they spoke briefly about the woman's children. The juror subsequently noticed that the woman was sitting in the audience at trial. She informed the court in chambers that she did not know whether the woman was supporting the State or the defense, but that she was nonetheless concerned about "retribution if something may or may not go a certain way."

The juror stated, in response to a question from the court, that this situation would not influence her verdict in any way. She later reiterated that she "would still vote for what [she] thought[.]" She also stated that she had not received any direct or implied threats and that the woman was "extremely nice." However, based on the nature of the case being tried and the juror's perception that all parties involved were connected and "hang with the same people," she feared physical harm. Counsel for Jones requested that the juror be struck, arguing that, despite her assurances, she could not be fair and impartial while experiencing fear of retribution. The State responded by pointing out that the juror was unaware of which side the spectator was supporting. The court ultimately denied Jones's motion to strike the juror, noting that she had not received any threats, had expressed no fear of the spectator, and had insisted that she could remain fair and impartial.

Jones alleges on appeal that the circuit court abused its discretion in refusing to strike the juror. He contends that the juror's fear, whether substantiated or not, should have disqualified her from the jury. He also maintains that the juror's statements in chambers contradicted her assurances that the situation would not influence her verdict. In response, the State points out that the circuit court was given an opportunity to determine the juror's sincerity and was entitled to believe her assertion that she could serve as a fair and impartial juror. The State also notes that the juror had not been threatened and could not identify which side of the case the spectator was supporting. The State additionally avers that Jones has failed to prove prejudice. A juror is presumed to be unbiased and qualified to serve, and the burden is on the appellant to prove otherwise. *Smith v. State*, 343 Ark. 552, 567, 39 S.W.3d 739, 748 (2001). It is for the trial court to decide whether a juror is qualified, and that finding will not be reversed absent a showing of abuse of discretion. *Id*. We have held that the appellant must demonstrate prejudice in arguing that a juror should have been removed. *Id*. The burden is on the appellant to prove that a reasonable possibility of prejudice resulted from juror misconduct, and prejudice is not presumed. *Id*. Whether prejudice occurred is also a matter for the sound discretion of the trial court. *Id*. at 567, 39 S.W.3d at 748-49.

■ We consider Jones's arguments to be without merit. First, the juror repeatedly stated that she did not know whether the spectator was supporting the State's case or the defense's case. In other words, she did not know whether the spectator was support-ing the victim or the defendant. The juror's stated reason for her desire to be excused from the jury was her fear of retaliation "if someone didn't agree with how this trial may or may not turn out." Yet, if she did not know which verdict this particular spectator would not "agree with," then her verdict could not have been affected. The juror did not know whether a guilty verdict or a not-guilty verdict would subject her to the retaliation she supposedly feared. Therefore, her decision could not have been influenced.

Secondly, the juror emphatically maintained that she had not received any direct or implied threats and that she had no reason to fear this particular spectator, whom she described as "extremely nice." In *Echols v. State*, 326 Ark. 917, 936 S.W.2d 509 (1996), where at least one juror did in fact receive a threat, this court deferred to the ability of the trial judge to determine whether

that threat constituted a problem. Because the juror informed the court that the threat she received would not affect her deliberations, this court held that the circuit court had not abused its discretion in refusing to grant a mistrial. *Id.* at 991, 936 S.W.2d at 547-48.

We stated in *Echols* that, "[i]n matters involving impartiality of jurors, we have consistently deferred to the trial court's opportunity to observe jurors and gauge their answers in determining whether their impartiality was affected." *Id.* at 991, 936 S.W.2d at 548. When a juror states that he or she can lay aside preconceived opinions and give the accused the benefit of all doubts to which he is entitled by law, a circuit court may find the juror acceptable. *Roberts v. State*, 352 Ark. 489, 505, 102 S.W.3d 482, 493 (2003). Although the bare statement of a prospective juror that he or she can give the accused a fair and impartial trial is subject to question, any uncertainties that might arise from the juror's response can be cured by rehabilitative questions. *Id.* In the instant case, the juror stated at least four times that this situation would not affect her decision. Counsel for Jones asked multiple follow-up questions. For example, on one occasion when the juror insisted that the situation would not influence her verdict, Jones's attorney asked, "Even though you're afraid that you might possibly be harmed physically if you ruled one way or the other?" The juror consistently and firmly contended that she "would still vote for what [she] thought[.]" The circuit court was in a position to gauge her sincerity in this regard and was within its discretion in determining that the situation would not in fact influence her decision. Accordingly, we must reject Jones's arguments.

Moreover, Jones has failed to prove prejudice. His brief merely alleges that "[t]here was a reasonable possibility of resulting prejudice" from the circuit court's refusal to strike the juror. We have repeatedly held that an appellant must do more than allege prejudice; he or she must actually demonstrate it. *Sheridan v. State*, 313 Ark. 23, 41, 852 S.W.2d 772, 781 (1993). This court will not reverse on the mere potential for prejudice. *Id.* at 42, 852 S.W.2d at 782. Furthermore, even if Jones had attempted to demonstrate prejudice, he could not have done so. Because the juror was unaware of which side of the case the spectator was supporting, the juror's deliberations and decision could not have been influenced by fear that the spectator might retaliate against her for her verdict.

We hold that the circuit court did not abuse its discretion in refusing to strike this juror, and that Jones has failed to demonstrate that he was prejudiced by the circuit court's refusal. Thus, we affirm his conviction on direct appeal.

### Cross-Appeal

Prior to the commencement of the sentencing phase of Jones's trial, his counsel indicated that he wanted to introduce a certified copy of a prior conviction of the victim. Jones's counsel maintained that the battery conviction was relevant to show that the victim was prone to violence, an argument that would have supported Jones's theory of self-defense. The circuit court initially rejected the evidence, finding it irrelevant in light of the fact that the jury had already rejected the self-defense argument when it found Jones guilty of first-degree murder. After taking time to review the issue, and after the State noted that it planned to present some victim–impact evidence at sentencing, the court stated that the defense could not "re-open" its case in another attempt to prove self-defense, but that it could present some victim–impact evidence to contradict the State's victim–impact evidence. In support of the proposition that victim–impact evidence is admissible by a defendant, the court cited to *Brooks v. State, supra*, and read part of the opinion into the record.

During the sentencing phase, the State introduced certified copies of Jones's prior convictions and called no victim–impact witnesses. The defense called Jones and his aunt to testify on his behalf. Over the State's objection, the court then admitted the victim's prior conviction "for victim impact, but not for any evidence of innocence of this defendant." The State requested permission to call a rebuttal witness, which the court denied because such evidence had been available to the State during its case-in-chief. After the jury returned its sentencing verdict, the State initiated a bench conference to "make a record for appellate purposes" as to the admission of the victim's prior conviction. The State argued that Jones had no right pursuant to the Fourteenth Amendment to introduce victim–impact evidence under Arkansas Code Annotated section 16-97-103, that the prior conviction was not relevant under Arkansas Rule of Evidence 402, and that the State had chosen not to present any victim–impact evidence so as not to open the door to such evidence by the defendant. The State also argued that *Brooks v. State, supra*, did not specifically address the

issue of victim-impact evidence presented by the defense. The court overruled the State's objection, noting that it was not contemporaneous.

On cross-appeal, the State contends that the circuit court's reliance on *Brooks v. State, supra,* was misplaced. The State argues that, while the appellant in *Brooks* introduced reverse victim-impact evidence at his trial, this court did not address the issue of whether it was proper for him to do so, because the issue was not raised on appeal. Jones has not filed a brief responding to the State's cross-appeal. The decision of whether to admit evidence rests in the sound discretion of the trial court, and we review such decisions by an abuse-of-discretion standard. *Ray v. State,* 342 Ark. 180, 184, 27 S.W.3d 384, 386 (2000).

Appeals filed on behalf of the State in criminal cases must comply with Rule 3(c) of our Rules of Appellate Procedure–Criminal. Rule 3(c) reads as follows:

> When a notice of appeal is filed pursuant to either subsection (a) or (b) of this rule, the clerk of the court in which the prosecution sought to be appealed took place shall immediately cause a transcript of the trial record to be made and transmitted to the attorney general, or delivered to the prosecuting attorney, to be by him delivered to the attorney general. If the attorney general, on inspecting the trial record, is satisfied that error has been committed to the prejudice of the state, and that the correct and uniform administration of the criminal law requires review by the Supreme Court, he may take the appeal by filing the transcript of the trial record with the clerk of the Supreme Court within sixty (60) days after the filing of the notice of appeal.

Ark. R. App. P.–Crim. 3(c) (2008). Pursuant to Rule 3(c), this court has stated that we accept appeals by the State in criminal cases when our holding would be important to the correct and uniform administration of the criminal law. *State v. Aud,* 351 Ark. 531, 533, 95 S.W.3d 786, 787 (2003). As a matter of practice, the court has only taken appeals that are narrow in scope and involve the interpretation of law. *Id.* Where an appeal does not present an issue of interpretation of the criminal rules with widespread ramifications, we have held that such an appeal does not involve the correct and uniform administration of the law. *Id.* Furthermore, appeals by the State are not allowed merely to demonstrate the fact that the trial court erred. *Id.* Thus, where the resolution of the issue on appeal turns on the facts unique

to the case, the appeal is not one requiring interpretation of our criminal rules with widespread ramification, and the matter is not appealable by the State. *Id.* at 533-34, 95 S.W.3d at 787.

This court has previously held that the erroneous application of the sentencing statutes affects the correct and uniform administration of justice. *State v. Pinell*, 353 Ark. 129, 131, 114 S.W.3d 175, 176 (2003). In the instant case, the State's argument as to victim-impact evidence stems from a sentencing statute, particularly Arkansas Code Annotated section 16-97-103 (Repl. 2006), which lists victim-impact evidence as one type of evidence relevant to sentencing. We have noted that sentencing and the manner in which punishment provisions can be imposed arise in every criminal case where a conviction is obtained, and that the application of statutory sentencing procedures requires uniformity and consistency. *State v. Freeman*, 312 Ark. 34, 35-36, 846 S.W.2d 660, 660 (1993). Accordingly, we accept jurisdiction of the State's cross-appeal.

However, we are precluded from addressing the State's argument on cross-appeal, as it was not properly preserved. Our review of the record shows that the State first objected to the attempt to introduce the victim's prior conviction when counsel for Jones first indicated to the court that he wanted to introduce it. At that point, Jones's counsel argued that the conviction would show the victim's violent nature, which would bolster his self-defense theory. The State contended that the conviction was not relevant to sentencing and that the jury had already rejected the self-defense argument. Subsequently, after the court recessed to consider the arguments and then ruled that the conviction could be introduced only for purposes of victim-impact evidence under *Brooks*, the State "ma[d]e an objection for the record" and moved in limine to prevent Jones's attorney from questioning State witnesses about the victim's criminal history. The State did not argue at that time that *Brooks* was inapplicable.

Later, when Jones's counsel actually moved to introduce the conviction, the State objected based on its previous argument. When the court inquired as to what the argument was, counsel for the State replied, "Relevance." Again, the State did not dispute the court's interpretation of *Brooks*, and the conviction was admitted. The State finally argued that the court's reliance on *Brooks* was misplaced during the bench conference following the pronounce-

ment of the jury's verdict at sentencing. At that point, the court rejected the argument as not contemporaneous.

It is well settled that an objection must be contemporaneous, or nearly so, with the alleged error. *Mills v. State*, 321 Ark. 621, 623, 906 S.W.2d 674, 675 (1995). The State is correct in noting that it objected to the admission of this evidence at the first opportunity. Specifically, the State objected at defense counsel's first mention of introducing the prior conviction. At that point, the State could not have objected on the basis of *Brooks* because Jones's counsel sought to introduce the evidence for proof of justification, rather than victim impact. However, the State failed on two subsequent occasions to argue the inapplicability of *Brooks* despite the fact that the circuit court discussed it. The State's contemporaneous relevance objection did not encompass the arguments now being made on appeal. Because the State failed to contemporaneously object on the basis of the circuit court's erroneous interpretation of *Brooks*, we are precluded from reaching the merits of the argument.

Affirmed on direct appeal; affirmed on cross-appeal.