JOSEPHINE LINKER HART, Associate Justice
Appellant Carl Mouton, was convicted in the Pulaski County Circuit Court of two counts of sexual assault in the second degree. On appeal, Mouton argues that he should have been permitted to present evidence of the sexual nature of the relationship between the victim, KV, and another minor, EP. Mouton argues that the exclusion of this evidence did not comport with Arkansas Rule of Evidence 411, and that the exclusion violated his constitutional right to present a defense. The State has also appealed, requesting that this court declare error regarding the trial court's refusal to allow Brittany Perry from testifying against Mr. Mouton as a 404(b) witness.
I. Background
Carl Mouton was the band director for Oak Grove High School and then continued to serve as band director after Oak Grove High School became Maumelle High School in 2011. The high school's band *78 program saw great success during Mouton's tenure, which developed an environment where both parents and students alike took pride in the school band and participated in its activities through a booster program.
KV attended Maumelle High School and played in the band from 10th through 12th grade. She graduated early at sixteen years old and was attending classes as a freshman in college at the time of the trial below. KV, like many other students, had a very close and friendly relationship with Mouton. KV and Mouton would regularly hug each other at school and band functions. Beginning in November 2014, KV began a dating relationship with another female student in the band, EP. At some point, KV's and EP's parents found out about their relationship, and they attempted to put an end to it by having KV, EP, and certain school officials sign an agreement that KV and EP would not sit together or hang out together at school unsupervised; however, Mouton did not force the girls to abide by the agreement when they were under his supervision. By the date of the pretrial hearing, May 8, 2017, KV and EP were no longer in a dating relationship.
During this time, EP was living in Little Rock, but she was able to attend Maumelle High School because her mother, Diedre Pippenger, had agreed with another individual, Leonard McKinney, who resided in Maumelle and with whom Pippenger reportedly had a close relationship, to represent to the public that EP was living at McKinney's residence. McKinney was very involved in the band's booster program and has a child of his own who had been in the band.
According to KV's pretrial testimony, during finals week of her sophomore year, KV and Mouton gave each other an end-of-the-year goodbye hug, and Mouton grabbed KV's bottom during their embrace. KV testified that Mouton continued to periodically grab her bottom when the two would hug throughout the remainder of her time at Maumelle High School. She also testified that in May 2015, Mouton pulled her breast out of her shirt and placed his mouth over her breast for approximately 15 seconds. KV reportedly told EP about the incident via text message two weeks later in July 2015 and made EP promise to keep it a secret. No evidence was presented regarding any other communicating or reporting of the incident at the time.
Over the course of the next year, Mouton's relationship with McKinney deteriorated due to disagreements about the management of the band. Mouton eventually "fired" (or was in the process of firing) McKinney from the booster club during the week of May 5-11, 2016. Mouton's and McKinney's disagreements apparently manifested in a "blowup" at a meeting at the school on May 5, 2016, for which both EP and McKinney were present and from which McKinney drove EP home. EP testified that, the next evening, she told her mother about the incident KV had described approximately a year prior. Pippenger herself recalled EP disclosing what KV had said about Mouton the same night McKinney drove her home from the meeting.
Pippenger testified that, for a day or two, she did not do anything in response to EP's disclosure, and she then called McKinney looking for advice. McKinney gave Pippenger the telephone number for the child-abuse "Hot Line," which Pippenger reportedly called a couple of days later. The ensuing investigation led to Mouton being charged with, and later convicted of, two counts of second-degree sexual assault against KV.
*79 II. Issues on Appeal and Applicable Legal Authority
The issues on appeal stem from the trial court's decisions with respect to two pretrial motions. The first was Mouton's "rape-shield" motion, which sought to introduce evidence of the sexual nature of KV's relationship with EP. The trial court denied this motion, ruling that Mouton could present evidence that KV and EP were close friends, but not evidence of their previous sexual relationship. Mouton appeals this decision, arguing that the evidence should not have been excluded under Rule 411, and that its exclusion violates his constitutional right to present a defense. The second pretrial motion was Mouton's motion to exclude Rule 404(b) testimony from one of the State witnesses, Brittany Perry. Perry would have testified that she and Mouton had engaged in physical interactions while Perry was a high school student, some eighteen years prior, that were similar to those alleged to have occurred between Mouton and KV. The trial court granted this motion, ruling that Perry would not be permitted to testify at trial. The State appeals this decision, seeking either (1) if this court reverses the trial court's decision pursuant to Mouton's arguments, a ruling on this issue to bring back to the trial court on remand, or (2) if this court affirms the trial court's decision with respect to Mouton's arguments, a "declaration of error" for the purported benefit of the bench and the bar.
We begin with Mouton's arguments, both of which deal with Rule 411, Arkansas's rape-shield rule. Some of our prior cases have addressed these arguments in tandem, so to obviate the need for multiple discussions of the same cases, we will first review all the applicable legal authorities and then apply the relevant provisions of those legal authorities to Mouton's arguments, one at a time. Mouton's first argument is that evidence of the sexual nature of KV and EP's relationship should not have been excluded under the procedure and analysis set forth in Rule 411(c). Rule 411 provides in relevant part as follows:
(b) In any criminal prosecution under Ark. Code Ann. § 5-14-101 et seq. or § 5-26-202, or for criminal attempt to commit, criminal solicitation to commit, or criminal conspiracy to commit an offense defined in any of those sections, opinion evidence, reputation evidence, or evidence of specific instances of the victim's prior sexual conduct with the defendant or any other person, evidence of a victim's prior allegations of sexual conduct with the defendant or any other person, which allegations the victim asserts to be true, or evidence offered by the defendant concerning prior allegations of sexual conduct by the victim with the defendant or any other person if the victim denies making the allegations is not admissible by the defendant, either through direct examination of any defense witness or through cross-examination of the victim or other prosecution witness, to attack the credibility of the victim, to prove consent or any other defense, or for any other purpose.
(c) Notwithstanding the prohibition contained in subsection (b) of this rule, evidence directly pertaining to the act upon which the prosecution is based or evidence of the victim's prior sexual conduct with the defendant or any other person may be admitted at the trial if the relevancy of the evidence is determined in the following manner:(1) A written motion shall be filed by the defendant with the court at any time prior to the time the defense rests stating that the defendant has an offer of relevant evidence prohibited by subsection (b) of this rule and the purpose *80 for which the evidence is believed relevant.
(2)(A) A hearing on the motion shall be held in camera no later than three (3) days before the trial is scheduled to begin, or at such later time as the court may for good cause permit.
(B) A written record shall be made of the in camera hearing and shall be furnished to the appellate court on appeal.
(C) If, following the in camera hearing, the court determines that the offered proof is relevant to a fact in issue, and that its probative value outweighs its inflammatory or prejudicial nature, the court shall make a written order stating what evidence, if any, may be introduced by the defendant and the nature of the questions to be permitted in accordance with the applicable rules of evidence.
The general purpose of the rape-shield rule "is to shield victims of rape or sexual abuse from the humiliation of having their personal conduct, unrelated to the charges pending, paraded before the jury and the public when such conduct is irrelevant to the defendant's guilt." McCoy v. State , 2010 Ark. 373, at 9, 370 S.W.3d 241, 247. Subsection (b) of Rule 411 identifies several types of evidence that will be inadmissible unless the admissibility of the evidence is established through the procedure and analysis set forth in subsection (c), by showing that the evidence is relevant and that its probative value outweighs its prejudicial or inflammatory effect.
Interpreting these provisions in Marion v. State , this court ruled that a defendant can present to the jury evidence of a victim's prior sexual conduct that would otherwise be prohibited by the rape-shield rule if the defendant can establish a legitimate "evidentiary hypothesis underpinned by a sufficient statement of facts." 267 Ark. 345, 348-49, 590 S.W.2d 288, 290 (1979). There, the defendant was charged with rape, and he filed a pretrial motion for an in camera hearing to determine the admissibility of the victim's prior sexual conduct. Id. at 346, 590 S.W.2d at 289. The trial court denied the defendant's motion, and the defendant then brought an interlocutory appeal of the trial court's decision to deny his motion. Id. This court made two important observations. First, with respect to the defendant's argument that the proffered evidence should have been admissible pursuant to the procedure and analysis set forth in subsection (c) of the rape-shield rule, this court held as follows:
Appellant's defense to the rape charge was that no sexual intercourse occurred between them on the alleged occasion. He proffered evidence that the charge against him was made by the prosecutrix because of a fight they had as a result of his contracting a venereal disease from her. At the time of the fight, she threatened "she would get even with him." Consequently, the present charge resulted. We cannot agree with the court's exclusion of this proffered evidence. Certainly, upon sufficient proffer as here, the victim's bias, prejudice or ulterior motive for filing the charge is relevant or germane to the question of whether the alleged act of sexual intercourse actually occurred and the probative value outweighs its inflammatory or prejudicial nature.
Id. at 348, 590 S.W.2d at 290. Accordingly, this court held that the evidence should have been admitted pursuant to the procedure and analysis set forth in subsection (c) of the rape-shield rule.
The Marion court also acknowledged the defendant's second argument, that the trial court's application of the rape-shield rule to the evidence in question violated *81 the defendant's constitutional right to confront the witnesses against him.
[A]ppellant's counsel was denied effective cross-examination of a constitutional magnitude when he, after stating an evidentiary hypothesis underpinned by a sufficient statement of facts, was refused the right to reveal possible biases, prejudices, or ulterior motives of the witness as they may relate directly to issues or personalities in the case at hand[.]
Id. at 348-49, 590 S.W.2d at 290 (internal quotations omitted). Accordingly, this court held that excluding the evidence of bias and motivation to lie violated the defendant's constitutional right to confront the witnesses against him.
Mouton also cites several United States Supreme Court cases in support of his argument that the trial court's application of the rape-shield rule violated his constitutional right to present a defense. He points to Crane v. Kentucky , 476 U.S. 683, 106 S.Ct. 2142, 90 L.Ed.2d 636 (1986), where the Supreme Court held:
Whether rooted directly in the Due Process Clause of the Fourteenth Amendment, Chambers v. Mississippi , supra , or in the Compulsory Process or Confrontation clauses of the Sixth Amendment, Washington v. Texas , 388 U.S. 14, 23 [87 S.Ct. 1920, 18 L.Ed.2d 1019] (1967) ; Davis v. Alaska , 415 U.S. 308 [94 S.Ct. 1105, 39 L.Ed.2d 347] (1974), the Constitution guarantees criminal defendants "a meaningful opportunity to present a complete defense." California v. Trombetta , 467 U.S., at 485 [104 S.Ct. 2528] ; cf. Strickland v. Washington , 466 U.S. 668, 684 685 [104 S.Ct. 2052, 80 L.Ed.2d 674] (1984) ("The Constitution guarantees a fair trial through the Due Process Clauses, but it defines the basic elements of a fair trial largely through the several provisions of the Sixth Amendment"). We break no new ground in observing that an essential component of procedural fairness is an opportunity to be heard. In re Oliver , 333 U.S. 257, 273 [68 S.Ct. 499, 92 L.Ed. 682] (1948) ; Grannis v. Ordean , 234 U.S. 385, 394 [34 S.Ct. 779, 58 L.Ed. 1363] (1914).
476 U.S. at 690, 106 S.Ct. 2142. Mouton also directs our attention to Davis v. Alaska , 415 U.S. 308, 94 S.Ct. 1105, 39 L.Ed.2d 347 (1974), and Olden v. Kentucky , 488 U.S. 227, 109 S.Ct. 480, 102 L.Ed.2d 513 (1988), cases in which the Court has emphasized the importance of the defendant's ability to cross-examine the witnesses testifying against him. In Davis , a burglary case in which the trial court prevented the defendant from using the fact that a witness was on juvenile probation for burglary to impeach that same witness, the Supreme Court stated:
On the basis of the limited cross-examination that was permitted, the jury might well have thought that defense counsel was engaged in a speculative and baseless line of attack on the credibility of an apparently blameless witness ... On these facts it seems clear to us that to make any such inquiry effective, defense counsel should have been permitted to expose to the jury the facts from which jurors, as the sole triers of fact and credibility, could appropriately draw inferences relating to the reliability of the witness. Petitioner was thus denied the right of effective cross-examination which would be constitutional error of the first magnitude and no amount of showing of want of prejudice would cure it.
415 U.S. at 318, 94 S.Ct. 1105 (emphasis added).
Olden is also instructive. There, James Olden and Charlie Ray Harris, both of whom were black, were indicted for kidnapping, rape, and forcible sodomy. 488 U.S. at 228, 109 S.Ct. 480. The alleged *82 victim, Starla Matthews, had traveled with her friend to Princeton, Kentucky, to exchange Christmas gifts with Bill Russell, Olden's half-brother. Id. After exchanging gifts with Russell at a car wash, Matthews went with her friend to a local bar. Id. Much of the remaining facts were in dispute, but the gist is that Matthews left the bar with Olden and Harris in Harris's vehicle, and Olden and Matthews engaged in sexual intercourse multiple times over the remainder of the evening. Id. at 228-29, 109 S.Ct. 480. Olden asserted that Matthews had propositioned him and that the sex was entirely consensual; Matthews asserted that the sex was nonconsensual and that Harris had assisted Olden by holding Matthews's arms. Id. Afterward, Olden and Harris drove Matthews back to Russell's house, dropped Matthews off, and drove away. Id. at 229-30, 109 S.Ct. 480. When Russell met Matthews at the door as she approached Russell's house, Matthews told Russell that she had just been raped by Olden and Harris. Id.
At trial, Olden sought to introduce evidence of the fact that Matthews was living with Russell in an effort to show Matthews's motivation to fabricate the allegations. Id. at 230, 109 S.Ct. 480. The Court observed,
Although Matthews and Russell were both married to and living with other people at the time of the incident, they were apparently involved in an extramarital relationship. By the time of trial the two were living together, having separated from their respective spouses. Petitioner's theory of the case was that Matthews concocted the rape story to protect her relationship with Russell, who would have grown suspicious upon seeing her disembark from Harris' car. In order to demonstrate Matthews' motive to lie, it was crucial, petitioner contended, that he be allowed to introduce evidence of Matthews' and Russell's current cohabitation. Over petitioner's vehement objections, the trial court nonetheless granted the prosecutor's motion in limine to keep all evidence of Matthews' and Russell's living arrangement from the jury. Moreover, when the defense attempted to cross-examine Matthews about her living arrangements, after she had claimed during direct examination that she was living with her mother, the trial court sustained the prosecutor's objection.
Id. at 229-30, 109 S.Ct. 480. The jury acquitted Harris of all charges and acquitted Olden of kidnapping and rape, but "in a somewhat puzzling turn of events," the jury convicted Olden of forcible sodomy and sentenced him to ten years in prison. Id. at 230, 109 S.Ct. 480. Olden appealed, arguing that the trial court's decision violated his constitutional right to be confronted with the witnesses against him. Id.
The Supreme Court reversed, ruling that the trial court's restriction upon Olden's ability to cross-examine Matthews violated Olden's Sixth Amendment rights. Id. at 231, 109 S.Ct. 480. The Court noted,
The Kentucky Court of Appeals did not dispute, and indeed acknowledged, the relevance of the impeachment evidence. Nonetheless, without acknowledging the significance of, or even adverting to, petitioner's constitutional right to confrontation, the court held that petitioner's right to effective cross-examination was outweighed by the danger that revealing Matthews' interracial relationship would prejudice the jury against her. While a trial court may, of course, impose reasonable limits on defense counsel's inquiry into the potential bias of a prosecution witness, to take account of such factors as "harassment, prejudice, confusion of the issues, the witness' safety, or interrogation that [would be] repetitive *83 or only marginally relevant," Delaware v. Van Arsdall, supra , [475 U.S. 673] at 679, 106 S.Ct. [1431] at 1435 [89 L.Ed.2d 674 (1986) ], the limitation here was beyond reason. Speculation as to the effect of jurors' racial biases cannot justify exclusion of cross-examination with such strong potential to demonstrate the falsity of Matthews' testimony.
Id. at 232, 109 S.Ct. 480. The Court then added that "a constitutionally improper denial of a defendant's opportunity to impeach a witness for bias" must be reversed unless the appellate court finds that the error was harmless beyond a reasonable doubt, based upon factors including "the importance of the witness' testimony in the prosecution's case, whether the testimony was cumulative, the presence or absence of evidence corroborating or contradicting the testimony of the witness on material points, the extent of cross-examination otherwise permitted, and, of course, the overall strength of the prosecution's case." Id. at 232-33, 109 S.Ct. 480 (referencing Van Arsdall , supra , and Chapman v. California , 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967) ). Applying those factors to Olden's case, the Court reasoned,
Here, Matthews' testimony was central, indeed crucial, to the prosecution's case. Her story, which was directly contradicted by that of petitioner and Harris, was corroborated only by the largely derivative testimony of Russell, whose impartiality would also have been somewhat impugned by revelation of his relationship with Matthews. Finally, as demonstrated graphically by the jury's verdicts, which cannot be squared with the State's theory of the alleged crime, and by Judge Clayton's dissenting opinion below, the State's case against petitioner was far from overwhelming. In sum, considering the relevant Van Arsdall factors within the context of this case, we find it impossible to conclude "beyond a reasonable doubt" that the restriction on petitioner's right to confrontation was harmless.
Olden , 488 U.S. at 233, 109 S.Ct. 480.
III. Analysis: Rule 411
Turning to the facts of this case, we first address Mouton's argument that evidence of KV's and EP's sexual relationship should have been admissible pursuant to Rule 411's plain language, without yet addressing the constitutionality of Rule 411's application to the evidence in question. This court will not reverse the circuit court's decision as to the admissibility of "rape shield" evidence unless its ruling constitutes clear error or a manifest abuse of discretion. Allen v. State , 374 Ark. 309, 287 S.W.3d 579 (2008).
The evidence Mouton sought to introduce triggers the application of Arkansas Rule of Evidence 411. Rule 411 is applicable to prosecutions for second-degree sexual assault, and Mouton was seeking to introduce evidence of KV's prior sexual conduct, specifically, her sexual relationship with EP. Accordingly, Mouton filed a pretrial motion pursuant to Rule 411(c) to determine whether the probative value of the sexual nature of the relationship was outweighed by the prejudicial or inflammatory effect its admission would have upon the proceedings. After the hearing, the trial court denied Mouton's motion, ruling that Mouton could present evidence of KV's and EP's friendship, but could not present evidence that KV and EP were previously having sex.
Once triggered, Rule 411(c)(1)-(2) dictates that the first question the trial court must ask is whether evidence of the sexual nature of KV's and EP's relationship would have been relevant at all to the trial. Relevance is an extremely low burden that is met whenever the evidence has "any *84 tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Ark. R. Evid. 401. As would be true in any case when two witnesses have a romantic sexual history, the fact that KV and EP had been engaged in sexual activity would have influenced the jury's impression of each girl's demeanor and testimony concerning each other. Thus, the excluded evidence would have been relevant to the proceedings because it could have been used to suggest bias or a motivation to lie.
The next question, as dictated by Rule 411(c)(2)(C), is whether the additional probative value of this evidence would have been outweighed by its prejudicial effect. As previously set forth, Mouton could have extracted probative value from the fact that KV and EP had a sexual history. However, for purposes of this analysis, the probative value of the suppressed evidence must be assessed in light of the evidence that Mouton was permitted to present at trial. Mouton was permitted to show that KV and EP were close friends. In other words, the fact that KV and EP had previously engaged in a sexual relationship only bears additional probative value to the extent that "friends who have had sex before" is more suggestive of potential bias in this case than "friends" would be.
Assuming the suppressed evidence would have offered additional probative value in this case, Rule 411(c)(2)(C) provides that this probative value must be measured against the risk of the prejudicial or inflammatory effect that introduction of the evidence would create. This court is without much guidance on this point. The State did not file a response to Mouton's motion to present the evidence of KV's prior sexual conduct; the trial court denied Mouton's motion without explanation; and on appeal, the State only argues that the proffered evidence would not have been relevant at all.
However, the trial court's analysis on this issue would necessarily have included certain considerations. First, one could argue that the presentation of this evidence would constitute a "parade" of KV's unrelated prior sexual conduct, which the trial court could have found to be "inflammatory" and implicative of the rape-shield rule's stated purpose. Additionally, there were several factual circumstances wrapped up in KV's and EP's relationship that, while having no bearing upon Mouton's guilt or innocence, could have had a prejudicial or inflammatory effect on the proceedings, such as the "contract" that KV and EP were forced to sign with their school officials and that Mouton declined to enforce. Overall, considering (1) that the Rule 411 balancing test requires suppression whenever the probative value of the evidence is outweighed by its prejudicial effect (as opposed to the traditional Rule 403 balancing test, which requires suppression only when the probative value of the evidence is substantially outweighed by its prejudicial effect); (2) the debatable extent to which this evidence would have supplied more probative value than the evidence Mouton was permitted to present to the jury; and (3) that the trial court's decision in this situation is reviewed for clear error or manifest abuse of discretion, we cannot say that the trial court committed reversible error in concluding that the language of Rule 411 warranted exclusion of the evidence in question.
IV. Analysis: Constitutional Right to Present a Complete Defense
We now address whether the trial court's application of Rule 411 to exclude the evidence in question violated Mouton's constitutional right to present a complete defense. A trial in which a constitutional *85 error occurred must be reversed unless the reviewing court finds the error harmless beyond a reasonable doubt. See Olden , supra ; Chapman, supra. We conclude that the trial court's decision in this case did not violate Mouton's constitutional right to present a complete defense.
While a defendant certainly has a constitutional right to present a complete defense at trial, it does not follow that any and all evidentiary exclusions adverse to the defendant will constitute a violation of that right. The Supreme Court has noted,
"[T]he Constitution guarantees criminal defendants 'a meaningful opportunity to present a complete defense,' " Crane v. Kentucky , 476 U.S. 683, 690, 106 S.Ct. 2142, 90 L.Ed.2d 636 (1986) (quoting California v. Trombetta , 467 U.S. 479, 485, 104 S.Ct. 2528, 81 L.Ed.2d 413 (1984) ), but we have also recognized that "state and federal rulemakers have broad latitude under the Constitution to establish rules excluding evidence from criminal trials," Holmes v. South Carolina , 547 U.S. 319, 324, 126 S.Ct. 1727, 164 L.Ed.2d 503 (2006) (quoting United States v. Scheffer , 523 U.S. 303, 308, 118 S.Ct. 1261, 140 L.Ed.2d 413 (1998) ). Only rarely have we held that the right to present a complete defense was violated by the exclusion of defense evidence under a state rule of evidence. See 547 U.S., at 331, 126 S.Ct. 1727 (rule did not rationally serve any discernible purpose); Rock v. Arkansas , 483 U.S. 44, 61, 107 S.Ct. 2704, 97 L.Ed.2d 37 (1987) (rule arbitrary); Chambers v. Mississippi , 410 U.S. 284, 302-303, 93 S.Ct. 1038, 35 L.Ed.2d 297 (1973) (State did not even attempt to explain the reason for its rule); Washington v.Texas , 388 U.S. 14, 22, 87 S.Ct. 1920, 18 L.Ed.2d 1019 (1967) (rule could not be rationally defended).
Nevada v. Jackson , 569 U.S. 505, 509, 133 S.Ct. 1990, 186 L.Ed.2d 62 (2013).
While it may not always be stated in identical terms, a consistent theme in the cases from both the Arkansas Supreme Court and the United States Supreme Court addressing the constitutional right to present a complete defense is that a defendant's ability to verbally cross-examine the witnesses presented against him will not be impeded, provided that the cross-examination pursues an evidentiary hypothesis underpinned by sufficient supporting facts. See, e.g. , Davis , 415 U.S. 308, 94 S.Ct. 1105, 39 L.Ed.2d 347 (defendant's theory was that complaining witness identified defendant as the burglar because complaining witness was afraid that authorities thought he was the actual burglar and wanted to divert suspicion; prosecution presented no evidence to foreclose defendant's theory); Olden , 488 U.S. 227, 109 S.Ct. 480, 102 L.Ed.2d 513 (defendant's theory was that victim levied rape accusation against defendant to discourage third party from ending his romantic relationship with victim after she had consensual sex with defendant; prosecution presented no evidence to foreclose defendant's theory); Marion , 267 Ark. 345, 590 S.W.2d 288 (defendant's theory was that victim levied rape accusation against defendant in retaliation for fight over defendant contracting venereal disease from victim; prosecution presented no evidence to foreclose defendant's theory). Furthermore, we are guided by our ruling in Marion , that
[t]he offer of proof [in support of introducing rape-shield evidence to the jury] need not be stated with complete precision or in unnecessary detail but it should state an evidentiary hypothesis underpinned by a sufficient statement of facts to warrant the conclusion or inference that the trier of fact is urged to adopt (,) .... (and) it ought to enable *86 a reviewing court to act with reasonable confidence that the evidentiary hypothesis can be sustained and is not merely an enthusiastic advocate's overstated assumption.
Marion , 267 Ark. at 349, 590 S.W.2d at 290.
Applying these principles to the case at hand, the trial court's exclusion of evidence of the sexual nature of KV's and EP's relationship did not violate Mouton's right to present a complete defense. Mouton's theory was that the allegations against him were fabricated by McKinney, Pippenger, EP, and KV in retaliation after Mouton fired McKinney. Mouton argues that evidence of the sexual nature of KV's relationship with EP was necessary to show the extent to which KV was aligned with EP's interests. The State argues that the timeline of Mouton's theory is fatally flawed in terms of when the allegation was first made and when it was first reported to authorities. Pippenger reported the allegations to authorities when EP disclosed them to her after the Mouton-McKinney blowup, and EP had no contact with KV between learning about the blowup and disclosing the allegations to Pippenger. EP already knew of the allegations from when KV revealed them to her approximately one year prior. The State argues, therefore, that Mouton's theory (that the allegations were a fabricated retaliation for McKinney's firing) would garner no factual support from any sexually related bias between KV and EP since the motivation for the alleged McKinney-Pippenger-EP-KV alliance to retaliate did not exist until approximately one year after KV had disclosed the allegations to EP. In response, Mouton argues that the very notion that KV had previously disclosed the allegations to EP could be another made-up component of the McKinney-Pippenger-EP-KV alliance's retaliation.
This is where Mouton's evidentiary basis for probing into KV's and EP's past sexual relationship at trial fails. All the evidence in the record before us supports the conclusion that KV disclosed the allegations to EP while the two were dating, several months before the Mouton-McKinney blowup. The only actual evidence in the entire record that could suggest that this prior disclosure was never made is Mouton's testimony at trial generally denying that anything improper ever occurred between him and KV. This no more supplies "an evidentiary hypothesis underpinned by sufficient supporting facts" than would Mouton's plea of "not guilty," and it is therefore insufficient to establish a constitutional violation. Accordingly, Mouton's constitutional right to present a complete defense was not violated, Chapman's harmless-beyond-a-reasonable-doubt standard of review has not been triggered, and the trial court's decision on this question is affirmed.
V. State's Cross-Appeal
The State also appeals from the trial court's decision to exclude the testimony from Brittany Perry, who would have testified that she had a similar experience with Mouton nearly two decades before the trial in this case. We decline to address this issue because it constitutes an impermissible State appeal.
When resolution of the issue turns on facts unique to the case, the appeal is not one requiring interpretation of rules with widespread ramification; thus, it is not appealable by the State. State v. Aud , 351 Ark. 531, 95 S.W.3d 786 (2003) ; State v. Hulum , 349 Ark. 400, 78 S.W.3d 111 (2002) ; State v. Stephenson , 330 Ark. 594, 955 S.W.2d 518 (1997). Despite the State's assertions to the contrary, the trial court's decision on this issue is not properly characterized as a misguided interpretation of *87 Arkansas's "pedophile exception" to Rule 404. Instead, this was a run-of-the-mill application of Rule 403, which this court reviews for a manifest abuse of discretion. Lard v. State , 2014 Ark. 1, at 7, 431 S.W.3d 249, 258. Here, the Rule 403 analysis would have turned upon the highly fact-specific circumstances of this case, including, but not limited to, the facts that the excluded testimony pertained to events that occurred nearly two decades before trial and that all the information gathered during the contemporaneous investigation had since been destroyed. Accordingly, review of this issue would serve no purpose outside the bounds of this particular case, and we therefore dismiss the State's cross-appeal.
Affirmed on direct appeal; dismissed on cross-appeal.
Kemp, C.J., and Baker, Wood, and Wynne, JJ., concur.